## EYSER v. WEISSGERBER.

Where it is evident that foreign or inapplicable instructions could reasonably have misled the jury, to the appellant's prejudice, the appellate court will reverse the case, and order a new trial; but not so, where the prejudice is not manifest.

Where, in an action for materials furnished, and work and labor performed, the petition stated that the parties entered into a contract, by which the plaintiff undertook to furnish materials and perform work and labor for a building, agreeably to a certain account or statement in writing, a copy of which is attached to the petition; and where the account or statement in writing, attached to the petition, was a bill of prices for certain described materials and work, and was signed by the parties, but contained no undertaking by either, nor any stipulation of any character; and where the court instructed the jury, that there was no written contract between the parties; *Held*, That the statement or account did not possess the first ingredient of a contract, and that the instruction was correct.

It is the duty of a court to determine, and so inform a jury, whether a writing introduced in evidence, is, or is not, a contract, or that which fixes the liability of the parties in the premises.

Where the instructions are so confused, that it is evident that the jury was misled, and acted at random, to the probable prejudice of the appellant, a new trial will be ordered.

But where the instructions in chief, and those asked by, and given for, the appellant, are conflicting merely, and the latter are incorrect, such conflict will not be a sufficient cause for reversal.

Where a party declares specially, he must succeed upon his special case and cannot recover as upon the common counts.

Where a party would recover for the reasonable value of services rendered, or materials furnished, upon a special contract, he must either declare in general assumpsit, or unite the common, with the special counts.

Whether, if a contractor abandons his contract, without the fault of the employer, he can recover what the work done is reasonably worth, under a proper petition, *quere?*

Where the materials, work, time, and manner of performance, are contained in a special contract, but the price to be paid is not fixed, it is proper to set forth the contract, and seek to recover what the services and materials are reasonably worth.

While by our practice, the appellate court will not inquire into the correctness of instructions given or refused, unless the party objecting has the same incorporated in a bill of exceptions; yet it is not necessary that he should except separately to each proposition contained in the instructions. A general exception to the entire instructions will, ordinarily, be sufficient.

But the judge below, or the opposite party, may, in such cases, require the

party excepting, to point out the specific portion or portions of the instructions to which he objects, so as to call the attention of the court to the objectionable matter.

Where the exception is to the whole charge, and greater particularity does not appear to have been required in the court below, errors may be assigned so as to obtain a review of any part of such instructions.

## *Appeal from the Scott District Court.*

THE plaintiff seeks to recover for materials furnished, and work and labor performed, on a house for defendant, and asks a mechanics' lien. The petition, as amended, contains two counts. The first states, that in March, 1854, the parties entered into a contract, by which, plaintiff undertook to furnish materials, and perform work and labor, for a building to be erected on certain real estate, described in the petition, and alleged to be owned by the defendant, " agreeable to a certain account or statement in writing," a copy of which is attached to the petition; that it was agreed, " that what work petitioner would perform, and what materials he should furnish, in and about said building, should be performed and furnished at the rates specified in said account or statement; and that payment should be made for the same, as fast as such materials and labor should be so furnished and rendered," and that petitioner did furnish materials, and perform work, in and about said building, as stated in an account annexed to his petition—which account professes to contain a full statement of all work performed, and materials furnished, as also all sums paid by defendant on said contract. The second count, after setting forth the substance of what is contained in the first, proceeds to state, that before said work was completed, and before payment therefor had been made, the building, which was in part erected, blew down, and was to a great extent destroyed; that petitioner then, not having received his pay from defendant, according to his contract, declined doing further work, or furnishing other materials, until a further agreement was entered into; that thereupon defendant promised, that if petitioner would complete said work, and finish said

building, as had been originally agreed, he would pay him the full sum which all the labor and materials were worth, and would indemnify him for all damages which he might sustain, or losses, and would make the same good to him on the completion of the work; and that under the agreement, petitioner recommenced work, found the materials, and finished and completed the contract, as he was bound to do by the original agreement." The "account or statement in writing" referred to, appears to be a bill of prices, for certain described materials and work, and is signed by the parties, but contains no undertaking by either party, nor any stipulation of any character.

The answer admits the making of the "contract" contained in said "statement in writing;" claims that said contract is entire; and that plaintiff was thereby bound to finish the whole work before he was entitled to any pay; admits that in the year 1854, plaintiff did work on the house on the lot described, and furnished timber therefor, under said contract, and none other, but not to the amount charged in plaintiff's account; denies any other contract, and especially the one set up in the plaintiff's petition, as being made after the fall of the house; denies that he failed to make payment as provided in the original contract, or that plaintiff ever recommenced the work, and finished and completed the contract as he was bound to do, by his original agreement; and denies the indebtedness to the amount claimed, or that plaintiff is entitled to a mechanic's lien for that sum. The testimony is all contained in a bill of exceptions, and so far as relates to the contract, is in substance, as follows: One witness swears, that after the house blew down, the parties were talking about it, and he heard defendant tell plaintiff, to go on with his work, and he should lose nothing by it. Another says, that defendant told him, that plaintiff should not suffer because the house blew down. Another swears, that defendant said, that if plaintiff would go on and finish the building, he should not lose anything. By another witness, it is proven that Eyser was originally to furnish all the materials, and do all the wood work of the house, and

Eyser v. Weissgerber.

was to be paid as his work progressed. It appears by one witness, that defendant went to New Orleans in July, 1854, and did not return until after this suit was commenced; and by another, that just before he left, he told plaintiff to finish the building as soon as he could; that defendant would pay him every cent; and that if he did not return soon.enough, he would send the money to witness to pay him; that plaintiff agreed to go on and finish the work. This same witness, who was defendant's agent, states in answer to the cross-examination of plaintiff, that he knows of no new contract, and that if there had been, he thinks he would have known it. There is a vast amount of testimony as to the quantity of materials furnished and work done, and the exact value thereof, is difficult of ascertainment. It is quite conclusively shown, that plaintiff abandoned the work, within a few days after defendant left for New Orleans—which was soon after the building blew down; that he did not furnish all the materials and do all the work in and about the house; and the only reason for the abandonment, given by plaintiff, was that he was afraid he would not get his pay, and that he would not advance money for lumber. So far as material, the instructions will be found referred to in the opinion of the court. The verdict of the jury was in favor of plaintiff. A motion for a new trial, for various specified causes, was overruled. A motion in arrest was also overruled, and judgment for the amount of the verdict, and the same made a lien on the building and lot described in the plaintiff's petition. The defendant appeals, and assigns for error the following:

1. The court erred in the charge given by the court to the jury.

2. The court erred in giving the instructions asked for by the plaintiff.

3. The court erred in giving instructions directly in conflict.

4. The court erred in refusing a new trial, and in overruling the motion to arrest the judgment.

*Whittaker & Grant,* for the appellant.

I. The charge of law, given by the court to the jury, on his own suggestion, is erroneous in the following points:

1. The court erred in saying, that no written contract had been established. This was an error of law, because the court had no right to say what was, or was not, proved. It was an error of fact, because the plaintiff says, the contract was, in part, reduced to writing, and the proof was all originally reduced to writing. The contract was a specification of work to be done, materials to be furnished, and price to be paid. Parol evidence was, and could properly be introduced to apply that work to its subjects, but not to modify, or change, or control the written terms. The court afterwards said, that this question was one for the jury, but that did not do away with the injurious effect of his erroneous charge, that no written contract had been established or produced.

2. The court erred in charging the rule as to deviations, from a special agreement (Sedgwick on Dam. 221), because it was not law applicable to this cause. This was not a case of deviation, but a case of non-performance. There was no question about a deviation from the original contract; there was no question about extra work. The question, and only question, was performance—performance of the written contract. It was proved, beyond cavil, that there was no performance of the first contract, or of the new contract, after the building fell down. The allegations of the plaintiff, and the issues, are on this new contract, which was, that the plaintiff and defendant agreed that the plaintiff was to go on and finish the work as originally contemplated—to do all the wood work, and furnish all the wood materials, for the building, except, that it was to be two stories, instead of three. The question, and sole question was, did the plaintiff perform the contract? The proof shows that he did not. Was he entitled to recover anything?

3. The third erroneous part of the court's charge, to which we ask attention, was, that the rule adopted in *Britton v. Turner,* 6 N. Hamp. 497, said to be approved in 11 Vermt.

560, and 12 Ib. 625, was law. *Britton* v. *Turner,* was a case for wages, on a contract to work for a year, and abandonment without cause. The court say, that the party failing to perform his contract, can recover what it is worth, to the defendant, though he has not performed the condition precedent; and they charged the jury in this cause, in effect, that the plaintiff could recover on a *quantum meruit,* though he had refused to perform and complete his contract; and the court gave that charge, on a petition, where the plaintiff averred a performance, and had no count for a *quantum meruit.* The court overruled the decision of our own state court, on this very question. The error into which the court, and the other side ,fell, was, in taking and following those cases, where a job for building a house is finished, but with deviations from the original contract, and the deviations are assented to by the defendant. There is not a case in the books, where a plaintiff has recovered on a contract for building a house, where he has abandoned the work, and refused to perform the contract. The proof in this cause, shows that the pretence set up by the plaintiff, of a failure to pay him as the work advanced, has no foundation. The plaintiff told the defendant, when he made the second contract, that he had no fears about his pay. His object in making the new contract was, to secure pay for the work lost by the falling of the house. He made a new contract to complete the house two stories high, and when finished, he was to be paid for his whole work. This new contract, which involved an expenditure of nearly five hundred dollars, he abandoned the day after it was made, and never afterwards did a day's work under the contract.

This question has been very satisfactorily settled in *Bush* v. *Chapman,* 2 G. Greene, 549.

" By his declaration," says WILLIAMS, C. J., " the plaintiff has made the written agreement, the gravamen of his action. He avers a complete performance, and sues for the price of the work, as therein stipulated. He seeks to enforce the payment of the price, on the ground, that he had, by the 1st of February (three months after the time set up in the

contract), completed the work, notwithstanding the failure of Bush to comply with his contract to furnish materials, at the stipulated time, so as to enable him to proceed with the work, as required by the agreement. At the same time, he declares upon the common counts, for work and labor, &c., and thereby claims the benefit of an adjustment of his rights, independent of the written contract, so as to enable him to recover for the value of his work, upon the evidence thereof; and also has damages for hindrances, &c., by the defendant, in not fulfilling his undertaking. This cannot be allowed. If a plaintiff sue on a written or special contract, so as to make it the basis of his action, it must regulate his right to recover, as well as the amount recovered. In this case, it is clear, that the plaintiff did not consider the written contract, if violated by the defendant, at an end, when the failure to perform on his part, occurred; but that on the contrary, he treated it as subsisting and in force. He proceeded on it, completed the work, and made it the ground of his action at law. By asserting the binding effect of the special contract, claiming the benefit of it, and making it the gravamen of his action, he is precluded from the recovery of any damages for delay, &c. This doctrine is recognized and asserted in Chitty on Contracts (5 Am. ed.), 570, note 2, referring to *Shaw* v. *Lewiston T. P. Co.;* 5 Penn. 445. In disposing of that case, C. J. GIBSON says: " If the company had put it into his power to dispense with the contract, it was his business, either to take advantage of the omission, by declaring the contract at an end, or waive the consequences of default, by treating it, as subsisting. The plaintiff not only treats the contract as subsisting, but claims to recover damages for delay, hindrances. The action being brought on the written contract, the plaintiff cannot recover damages not stipulated for in it." To this effect, see 9 Ala. 106; 11 Ib. 377; 1 G. Greene, 408; 14 Maine, 364; 1 Shepley, 60; 4 Pick. 114; 19 Ib. 349.

*Britton* v. *Turner*, is not law in this state, nor anywhere else. It is not sustained by a single decision in America. The case in 11 Vert. 360, was decided on the ground, not

law, it is true, that the laborer was excused by sickness; and 12 Vert. 625, was decided on an entirely different point. In all cases, where there is a special executory contract, and the work is not performed, the plaintiff can recover nothing on a *quantum meruit*, while the contract is executory. 1 Parson's on Cont. 522, 540; *Clark* v. *Smith*, 14 Johns. 326; *Rees* v. *Lewis*, 8 Car. & P. 124; and *Silevery* v. *Fogg*, 5 Mee. & W. 83; a case where there was fraud, and no abandonment. Where a party abandons a contract, he can recover nothing on a *quantum meruit*. This is the rule in England. *Cutler* v. *Powell*, 6 Term R. 320; *Ellis* v. *Hamlin*, 3 Taunton, 52; *Hull* v. *Hughman*, 2 East, 145; *Sinclair* v. *Bowles*, 9 B. & Cr. 92; *Spaun* v. *Arnott*, 2 Starkie, 256; *Waddington* v. *Oliver*, 5 Bos. & Pul. 61; *Walker* v. *Dixon*, 2 Starkie, 281; *Kingston* v. *Cox*, 5 Man. G. & I. 522.

The same principle, that where a party fails to perform an executory contract, he can recover nothing, has been decided in the following states: Maine, *Miller* v. *Goddard*, 34 Maine, 102. New Hampshire, *Weeks* v. *Leighton*, 5 New Hampshire, 343. Vermont, *St. Albans* v. *Wilkins*, 8 Vermont, 54; 2 Ib. 79; 1 Ib. 268; 17 Ib. 355; 19 Ib. 503; *Kettle* v. *Harvy et al.*, 21 Ib. 301; *Jones* v. *Marsh*, 22 Ib. 144. Massachusetts, *Faxen* v. *Mansfield*, 2 Mass. 147; *Olmstead* v. *Beale*, 19 Pickg. 528; *Boyle* v. *Agawam Canal Co.*, 22 Ib. 381; *Davis* v. *Maxwell*, 12 Metc. 286; *Rice* v. *Dwight Manufacturing Co.*, 2 Cushing, 80. New York, *McMillan* v. *Vanderlip*, 12 John. 165; *Raymond* v. *Barnard*, 12 Ib. 274; *Jennings* v. *Camp*, 13 Ib. 94; *Ketcham* v. *Everton*, 13 Ib. 365; *Thorpe* v. *White*, 13 Ib. 53; *Clark* v. *Smith*, 14 Ib. 326; *Marsh* v. *Rulesson*, 1 Wendell, 514; *Champlin* v. *Rowley*, 18 Ib. 187; *Monell* v. *Burns*, 4 Denio, 121; 5 Denio, 406; *Gregory* v. *Marsh*, 3 Hill, 384; *McNight* v. *Dunlap*, 4 Barb. 34; *Smith* v. *Brown*, 17 Ib. 431; *Oakley* v. *Morton*, 1 Kernan, 33, which case occurred since the New York Code was adopted. It not only establishes, that performance is not excused by inevitable necessity; but it establishes another proposition, equally conclusive of the erroneous action of the court, which is this, that, under an allegation

of performance, the plaintiff can produce no proof in excuse of non-performance.  Pennsylvania, *Shaw* v. *L. Turnpike Co.*, 3 Penrose & Watts, 445. . Alabama, *Given* v. *Dairly*, 4 Alabama, 336; *Nesbitt* v. *Drew*, 17 Ib. 379.  Mississippi, *Martin* v. *Reed*, 2 Smedes & Mar. 585.  Ohio, *Witherow* v. *Witherow*, 16 Ohio, 238.  Kentucky, *Hawks* v. *Griffin*, 14 B. Monroe, 153.  Indiana, *DeCamp* v. *Stevens*, 4 Blackford, 24. Illinois, *Eldridge* v. *Rowe*, 2 Gilman, 91.  Missouri, *Helm* v. *Wilson*, 4 Missouri, 41; *Feagan* v. *Meredith*, 4 Ib. 514; see, also, 2 Kent, 668.

Every case in relation to houses, barns, &c., which can be cited, where there was a recovery on a *quantum meruit*, was where the work was completed, but with a variation.  Even the case of *Britton* v. *Turner*, which was a contract for wages, is not entirely against us.  The court said, in that case, that "if on such failures to perform the whole, the nature of the contract be such, that the employee can reject what has been done, and refuse to receive any benefit from the part performance, he has the right so to do, and in such case is not liable to be charged?"

II. The charge asked by the plaintiff is erroneous, as follows: "That payment was to be made, in the absence of any contract, in the usual and customary manner."  We rather suppose the usual rule will apply, that when one act was the consideration of the other, he who would recover, must first perform, or offer to perform, on his part.  The plaintiff's second instruction is erroneous, because it assumes that the defendant has not denied the time and manner of payment.  The defendant had denied both the time and manner of payment, and the assumption of the instruction, is erroneous, and tended to mislead the jury.  The plaintiff's third instruction was erroneous, because the plaintiff in his pleadings, had averred a performance of the contract, and he could not give in evidence, or rely on an excuse for non-performance.  See 1 Kernan, 33, already cited.  The case in 3 Penn. 44, is a case directly in point; and the note in Chitty, cited on the other side, is erroneous.

III. The court erred by giving instructions directly in

conflict. The court say, *Britton* v. *Turner* is law; and that the plaintiff could recover on a *quantum meruit.* The court gave the defendant's instructions on this point, which lay down the law just as directly opposite, as language can make them. The court say *Britton* v. *Turner* is law; and that 1 Kernan, 25; 22 Pick. 381; 2 Gilman, 91; 4 Missouri, 514, are law; and they directly conflict. Indeed, it is very difficult for instructions to be asked; more directly in conflict, and yet the court gave all that were asked on both sides, and added others, in favor of the plaintiff, which his attorneys, bold men as they are, did not ask, because they must have known they were not law.

IV. The court erred in refusing a new trial. There was no evidence to sustain the verdict; no law to sustain it. If the plaintiff could have recovered on a *quantum meruit,* still there should have been a new trial. The only evidence as to the value of the work, was the defendant's; that proved the whole work to be worth about $428. The plaintiff had been paid $425, and the jury gave $569 more.

V. The court erred in refusing to arrest judgment, and in giving judgment. The verdict of the jury is mostly for damages. They do not find any contract. The charge of the court was, that there was no contract; the verdict cannot be construed to mean that there was, and no mechanics' lien can be granted on a *quantum meruit.* The verdict of the jury does not find that the work was done in pursuance of any contract, on any land. See Code, §§ 981, 985. A party cannot recover for a mechanics' lien on a *quantum meruit.* The petitioner is bound to prove his contract as laid, in order to entitle him to recover. He cannot abandon or depart from his special agreement, and go as upon a *quantum meruit. Carroll* v. *Craine,* 4 Gilman, 566. The general features of the Illinois law and ours are the same.

*Cook & Dillon,* for the appellee.

This action was brought by Eyser, to recover a balance due him from the defendant, for work done upon, and materials furnished for, a certain building situated upon the

land of the defendant. There is, as we maintain, no written contract between the parties. The defendant, it is true, attempts to dignify the paper attached to the petition marked " B," by the name of a contract; but it cannot be so regarded. It is without date; and standing by itself, it is impossible to say what it means, or what it was designed for; and contains no stipulation on the part of anybody, to do anything. It does not contain the first ingredient of a contract. It is nothing but what mechanics know by the designation of a " bill of prices " for work, &c.

Let us look at the pleadings to ascertain the issues. The plaintiff filed his original petition, and afterwards an amended petition. The " original" petition (so called to distinguish it), and the first section (or count) of the amended one, are in substance identical, and to which we wish to invoke the especial attention of the court. The petition does not declare upon the paper marked " B," as a contract; but after referring to that paper, it proceeds to state the contract as follows: " That what work petitioner should perform, and what material he should furnish, in and about said building, should be performed and furnished at the rates specified in said account; and that payment should be made for the same, as fast as such materials and labor should be so furnished and rendered," &c. This count nowhere alleges, that the plaintiff had agreed to do all the work mentioned in exhibit " B;" nor that he was bound to do any specific amount thereof; or that he had completed what he agreed to do; but says, he has done the work, &c., mentioned in exhibit " C," and is entitled to recover the balance due him thereon. The court, on motion (Code, § 1735), would doubtless have ruled the plaintiff to have set forth more specifically what amount of work, &c., he agreed to do, and when, and how, but it was not required by the defendant. The defendant answers: and the parties go to trial. There is no issue made here, that the plaintiff finished and completed the house, &c. We say, that all the evidence offered by the plaintiff, is relevant to this count, and fully justifies the verdict.

In the second count, or section, of the amended petition, the plaintiff sets forth a subsequent agreement, &c., and that he finished the work.    The appellant objects now, that there is a variance between the allegations in this count and the proof, in this: that the work was not finished.    We reply to this: 1. By saying, that if either count in the petition, is supported by the proof, it is sufficient; 2. That he ought to have objected to this variance at the time, when the plaintiff could have amended his pleadings; and that he cannot now object to the testimony on that ground.    We shall cite the authorities on this point, hereafter.

The third count (or section) in the amended petition, is in the nature of a *quantum meruit.*    Code, § 1752; *Smith* v. *Congregational Church, &c.,* 8 Pick. 178.    "Counts on a special contract, under seal, and a *quantum . meruit,* may be joined in an action of debt."    See, also, *Gibson* v. *Powell,* 5 Smedes & Mar. 712.    An action of debt, or assumpsit, may be maintained, upon an implied promise for labor done, and materials found, under a special contract, which has not been performed on the part of the plaintiff."    8 Pick. 178.

Before we call the attention of the court to the authorities cited and read by Judge GRANT, we wish to premise, that the reports furnish us with two distinct classes of cases, so completely variant in the doctrines they assert upon this subject, as to defy all attempts to reconcile them.    We will refer to these, although we maintain that these questions do not arise in the case under review, because: 1. We allege that a new contract was made; 2. That the defendant first violated the contract, by not paying as he agreed—in consequence of which, the plaintiff was justified in quitting the work, and can recover for what he had done previously. The one class of these cases decides, that where one party agrees to do a specific thing, and by a specific time, and in a specific manner, full and complete performance is a condition precedent to the right to recover anything.    A fair specimen or type of this class, is the case of *Cutter, Adm'x* v. *Powell,* 6 T. R. 320.    This is the case where a mate was to receive thirty guineas, in case he performed a certain

voyage to Liverpool, and where he died during the voyage; and the court held, that nothing could be recovered, either on the contract, or on the *quantum meruit*. If this is law, it is a very hard one, and against conscience. Another of this class, is the one of *Sinclair* v. *Bowles*, 9 Barn. & Cress. 92. In the United States, the case of *McMillan* v. *Vanderlip*, 12 Johns. 165, follows the same doctrine. This is the case where A. agreed to work for B. ten and a half months, and spin yarn at three cents per run; and brought an action (having quit the service before the expiration of the time), for 845 runs, at three cents per run: held, that nothing could be recovered.

The other class of cases, conflicting with that class above cited, and irreconcilable with them, have their type, so to speak, in the cases of *Cooke* v. *Munstone*, 4 Bos. & Pull. 351, 355; *Shipton* v. *Casson*, 5 Barn. & Cres. 378; *Oxendale* v. *Wetherill*, 9 Barn. & Cres. 386. In this last case, Lord TENTERDEN observed, that it would "follow from the doctrine contended for, that if there had been a contract for 250 bushels of wheat, and 249 had been delivered to, and retained by, the defendant, the vendor could never recover for the 249, because he had not delivered the whole." We ask the particular attention of the court, to the note to pages 218 and 219 of Sedgwick on Damages, where he cites many cases to show, that in many instances, and particularly in building contracts, precise and full performance is not, in all cases, absolutely necessary to recover at all; but it is a matter affecting the amount, more than the right, of recovery, in actions like the one at bar.

We now wish to make one general remark, in reference to the argument and authorities of the counsel for the appellant, and it is this, that both the argument and authorities assume, that the plaintiff abandoned the contract, and refused to complete it. This we deny. The plaintiff did not abandon the work. He did not violate the contract. But the defendant first broke the contract, by not making payment as he agreed to do; wherefore the plaintiff was under no obligation to finish the work, and can recover for

what he did perform.   The evidence, and the verdict of the
jury, show, that the plaintiff, over and above payments, did
work, and furnished materials, to an amount of over $500,
which the defendant used and appropriated for his own
benefit.

What is the pretext now urged, for not paying the plain-
tiff?   It is (and this, in fact, constitutes the basis of all the
errors assigned), that the plaintiff has stated in his petition,
that he agreed to complete the work, and inasmuch as he
has not proved that he completed all the work, he cannot
recover anything.   In the original petition, and in the first
section (or count) of the amended petition, the plaintiff has
made no averment that he agreed to do all the work, &c.,
mentioned in the schedule of prices attached to the petition.
These counts tender no issue of performance of all the work
specified in the "bill of prices."   The appellant now con-
tends, that the judgment of the court below ought to be re-
versed, because the evidence did not warrant the jury in
rendering a verdict for the plaintiff, inasmuch as such evi-
dence does not show a full performance on his part.   We
apprehend that this objection comes too late.   The ground
taken is, that there is a variance between the proof and the
evidence.   Very well.   What was his proper course ?   It was,
either to have objected to its admission, because of its variance
from the allegations, and then, if the court below had ruled
such evidence in, he could have excepted, and preserved the
question.   Or, if, when the proof was all in, it did not cor-
respond with, and was materially variant from, the allega-
tions and issues made, then, it was his duty to have moved
the court to exclude the evidence; and in case of a refusal
to do so, he could except, and thereby save the question for
review in this court.   A party cannot sit by, suffer testi-
mony to go into a jury, and, after verdict and judgment,
object that there is a variance between the proof and the
pleadings.   He must object at the time.   3 Scam. 129; 3
Gill, 535.

It is not necessary for us to cite and review, all, or even
any, of the cases referred to by the counsel for the appellant.

They are all, both English and American, cases where there was a definite and special contract between the parties, and where the plaintiffs in those cases had, without any reason, abandoned the contract, and refused to perform it, and then brought suit on a partial performance. These cases may, or may not, be law, but they do not apply to the present case, because the evidence shows, that the defendant first failed to keep his part of the contract, and which exempts the plaintiff from further proceeding with his work. Chitty on Contracts (6th ed.), 570, note 2.

We do not rest this case, on the doctrine laid down in *Britton* v. *Turner*, 6 N. H. 497, nor is the doctrine there laid down, necessarily involved in this case, so that this court is not called on either to sanction, or repudiate it. In Buller's Nisi Prius, 139, it is laid down as a general proposition, " that if a man declare upon a special contract, and upon a *qantum meruit*, and prove the work done, but not according to the contract, he can recover on the *quantum meruit*." See *Cooke* v. *Munstone*, 4 Bos. & Pull. 351; *Shipton* v. *Casson*, 5 Barn. & Cres. 378; *Oxendale* v. *Wetherill*, 9 Ib. 386; *Linningdale* v. *Livingston*, 10 Johns. 36; *Jewell* v. *Scopell*, 4 Cowen, 564; *Pelter* v. *Seiwall*, 12 Wend. 386; *Davis* v. *Fish*, 1 G. Greene, 407; *Cruikshank* v. *Mallory*, 2 G. Greene, 257; *Du Bois* v. *Delavan*, 4 Wend. 290; *Merrick* v. *Slason*, 19 Vermont, 127.

We take this further position, that there is nothing in this case, which this court, as a court of errors, can take cognizance of, for the reason that the appellant's exception, both to the plaintiff's instructions, and to the charge of the court (which is lengthy, and involving several propositions), is a general and indiscriminate exception, without any specification whatever. The bill of exceptions, after setting out the testimony (to the admission of which, by the way, the appellant never objected), and the whole charge of the court, and all of the plaintiff's instructions, says: "To all of which instructions of the court, as well those given by the court, as those given at the request of the plaintiff, the defendant then and there excepted, and prays, &c." This brings

this case precisely within the operation of the rule laid down in *Caldwell* v. *Murphy*, 1 Kernan, 416; 5 Denio, 213; 2 Selden, 233. "Where the charge of the court involves several propositions, and as to some of them it is unobjectionable, an exception taken at the conclusion, to each and every part of the charge, presents no question for review on a bill of exceptions."

WRIGHT, C. J.—To reverse this judgment, defendant relies in his assignment of errors, upon sixteen different grounds, the most material of which we proceed to notice; and we may say at once, that we think a large portion of the instructions are entirely inapplicable to the case. Such we have examined carefully, and while we thus regard them foreign, yet we are unable to see that the jury could reasonably have been misled thereby, and it therefore, will be unnecessary to further refer to them. Of this character, is all that is said in the instructions in chief, as to the law where there have been deviations from the original plan agreed upon by parties, or where there has been extra work. We do not see any testimony tending to raise these questions, and are unable to see their applicability in any way, to the case. The same is true of the plaintiff's and defendant's instructions relative to the fall of the building, for we do not understand that either party claims, that the plaintiff's right to recover, or the defendant's liability, is increased or diminished by that circumstance. Where it is evident that such foreign or inapplicable instructions, could reasonably have misled the jury, to the appellant's prejudice, this court will reverse the case, and order a new trial. But not so, where the prejudice is not manifest. This disposes of the second and seventh assignment of error.

The court below charged the jury, that the decisions predicated on written contracts, were not applicable to the case at bar, "as no written contract had been established or produced, showing the nature of the undertaking of the parties, or their several liabilities in the premises," and this is claimed to have been error, both of fact and law. We think

this instruction was substantially correct. The point of the instruction, as we understand, and that to which the objection is made, is that the jury are told that there was no written agreement between the parties. It is the duty of of a court to determine, and to inform the jury, whether a paper or writing introduced is, or is not, a contract—is or is not, that which fixes the liability in the premises. This paper had not the first ingredient of a contract. By it, no person could learn where, when, or how, the work was to be done; who was to do it; who was the employer, or employee; what the terms of payment; when it was made, or whether it had the most remote relation to the building erected. It states neither parties, object, nor subject matter. There is, in short, neither agreement, consideration, or a thing to be done or omitted; and the jury were, therefore, properly informed, that no written contract had been introduced, showing the undertaking or several liabilities of the parties. When taken in connection with the pleadings and oral testimony, we understand it to be, a statement of the prices that defendant was to pay for certain materials and labor to be furnished and performed by plaintiff, and nothing more. If, however, the pleadings and proof shall, in connection with this paper, show a contract, then it must be governed by the same rules, and the parties be subject to the same liability thereunder, as if it was written, whether that contract shall be entire or several—certain, dependent, or independent covenants—be executed or executory—or whatever its conditions. And this brings us to an examination of the plaintiff's petition, the great mass of the instructions, and indeed the points in the case upon which counsel have bestowed much labor and research, and upon which appellant chiefly relies, to reverse this judgment.

On the trial, the jury were properly told, that whether there was any contract, and if so, its nature and conditions, and whether it had, or had not, been performed, were to be determined by them, from the evidence. The court also instructed the jury, " that where a contract is made of such a character, that a party actually receives labor and materials,

and thereby derives a benefit, over and above the damages, which have resulted from the breach of the contract by the other party, the labor actually done, and the value received, furnish a new consideration, and the law, therefore, raises a promise to pay to the extent of the reasonable worth of such excess. This may be considered as making a new case,— one not within the original agreement,—and the party is entitled to recover on his new case, for the work done, not as agreed, yet accepted by the defendant. If, on such failure to perform the whole, the nature of the contract be such, that the employer can reject what has been done, and refuse to receive any benefit from the part performance, he is entitled so to do; and in such case is not liable to be charged, unless he has before assented to, and accepted what has been done. But where the party receives value, takes and uses the materials, or has advantages from the labor, he is liable to pay the reasonable worth of what he has received. The amount, however, which the employer ought to be charged, when the laborer abandons the contract, is only the reasonable worth, on the amount of advantage he receives upon the whole transaction, and in estimating the value of the labor, the contract price for the service cannot be exceeded," citing *Britton* v. *Turner*, 6 N. H. 497; *Fenton* v. *Clark*, 11 Vermont, 560; 12 Ib. 625; and further, that " the principle here adopted, is that it is unconscionable and inequitable, for a party who has been actually benefited by the part performance of a contract, above or beyond the damages he has sustained, by the non-performance of the residue of the agreement, to retain this excess of benefit, without making the other party a compensation therefor." And after having laid down these rules, in the instructions in chief, the court, at the request of defendant, gave the following:

1. That the plaintiff in this cause, having brought this action on a special contract, and averred a performance of the contract, cannot recover at all, unless he proves the performance thereof, as alleged.

2. If a person contract to build a house, or to do the wood

work, and furnish the raw materials for a house on the land of another, and proceeds to perform the work, in part, and afterwards refuses and neglects to complete the residue according to the terms of the agreement, and it is impracticable for the employer to abandon it, he can appropriate the work so far as it may have progressed, without being subject to an action for what the work is worth," citing *Boyle* v. *Agawam Canal Co.*, 22 Pick. 381 ; *Oakley* v. *Martin*, 1 Kernan, 25.

8. " That under no proof which plaintiff might offer, short of performance of all the work, and furnishing all the materials agreed upon, can the plaintiff recover in this action.

18. " That if plaintiff abandoned the work before he completed his contract, and refused to complete it, or permit others to complete it, he cannot recover in this action."

And, in addition to these, the court gave some eight other instructions, at defendant's request, equally as explicit, and laying down the doctrine quite as strong, that plaintiff could not recover upon an entire contract (on this contract, see 8th instruction), without proof of entire performance.   The instructions in chief, and those given as asked by defendant, cannot all be law.   There is an irreconcilable conflict between them ; and we may be permitted to express our surprise, that, after having given the one, the court should have given the other.   And, in this connection, we will dispose of the appellant's assignment of error, based upon this very conflict.   Nothing tends so much to certainty in judicial proceedings, or is more likely to insure the correct administration of the law in our courts, than clearness in the instructions given to the jury.   These should, ordinarily, be brief—enunciating, with perspicuity, the very principles that apply, and upon which the case should be decided—lopping off all extraneous matter.   Any other course must necessarily confuse a jury, and endanger the rights of parties; and yet we are aware, that, in cases strongly contested, it requires great care to do this.   The counsel will prepare lengthy instructions ; a portion being correct and applicable, perhaps; others, abstractly correct, but entirely foreign to the case; and in the haste incident to such trials, all are given.   We

regret to see that this is a growing evil, and the remedy lies almost exclusively in the hands of the judge, who should make it a cardinal point, to have practical certainty in the trials had before him, even if he shall not arrive at theoretical perfection. In the case before us, the difficulty can hardly be said to be one of confused instructions, but the giving of those that do plainly and manifestly conflict. The jury could well understand, that the law was either as laid down by the court, or as asked by defendant, and given; but which, it must be conceded, the jury could not tell, from the instructions. Where instructions are so confused, that we can see that the jury were misled, and instead of deciding the case upon the questions involved, acted at random, to the probable prejudice of the complaining party, we should not hesitate to order a new trial. When the complaining party has, however, asked and obtained instructions which conflict with those given in chief, we do not think it would be a safe or salutary rule, to reverse a case for that reason. If his instructions are right, then the others are wrong, and for that reason the case should be reversed. If his are wrong, and, notwithstanding their strong and explicit language, it should appear that the jury decided the case correctly, under all the circumstances, then the judgment should not be disturbed.

We, therefore, are left to determine, which of these instructions are correct, and which erroneous. It is very manifest, that if the jury had followed the law, as laid down in defendant's instructions, they never could have found this verdict, while, if they followed the other ruling, they reasonably might. Before examining these instructions, it will be necessary, to refer with a little more care, to plaintiff's petition. And, briefly, we understand the second count to declare upon a special, entire contract, and to aver a fulfillment thereof. The first count, we understand to declare upon a special, but not an entire contract. It avers, in substance, that for certain prices named in the bill or statement signed by the parties, the plaintiff was to furnish materials, and do work on a house, described and located, and for

what he did furnish and perform, he was to be paid at the rates therein specified, as said materials and labor were furnished and rendered; that he did furnish materials and perform work under said contract, to an amount shown in the account annexed; and that there remains due and unpaid, the amount claimed; but there is no averment, that he either was to, or did, furnish all the materials, and complete the house. And yet it is quite evident, that, in both counts, plaintiff seeks to recover specially upon an alleged special contract, and does not declare generally on the assumpsit which the law implies. In other words, he places his right of action, in each case, upon an express contract, and not upon the implied legal liability of the defendant, to pay or recompense him for materials furnished and work performed, at his request.

Having then declared specially, with nothing in the nature of the common counts, can he recover what the materials and services were reasonably worth, as in general assumpsit? We think not. We are aware that courts have had much difficulty, in solving the many questions that constantly arise in actions brought to recover on special contracts, where there has been a partial performance—where there have been deviations from the original contract—where there has been an abandonment of the work to be performed, with and without the consent of the employer—and where the contract has not been performed, and the employee seeks to recover what his work or services are reasonably worth. We know of no case, however, which has gone so far as to hold, that a party may declare specially, and yet recover as upon the common counts. In all the cases in which it has been held, that a party may recover for the reasonable value of his services rendered upon a special contract, it will be found, that he claimed under the common counts alone, or else had the special, as well as the common counts, in his declaration. This is abundantly shown in the case of *Britton* v. *Turner*, 6 N. H. 481, relied upon by appellee, as also in *Haymond & Leonard*, 7 Pick. 181; *Epperly* v. *Bailey*, 3 Ind. 73; *Pierson* v. *McKebbin*, 5

Ind. 261; *Coe* v. *Smith*, 4 Ib. 79; and, indeed, in all that class of cases which hold, that the contractor may recover a reasonable sum for the services he has actually performed, though he has failed to complete the contract in all its parts. If he declares alone upon the special contract, he cannot recover, because the work or service which was to entitle him to the amount agreed upon, has never been performed, and therefore, the proof fails to sustain the material averments in the petition.    If he declares upon the common counts, however, he relies not upon any special or express promise, but upon the implied obligation which the law imposes on the defendant, to pay what the services are reasonably worth, deducting therefrom whatever damages he has sustained, by reason of the non-fulfillment of the contract.   In this case, we do not determine the much disputed question, whether the plaintiff could recover upon the common counts, what the materials furnished, and labor performed, were reasonably worth, if he abandoned the contract.   On this subject, the authorities are very complicated, and not to be reconciled.   We may say, however, that a majority of the court, which heard the argument, incline strongly to the opinion, that upon a proper declaration, the action might be maintained.   As the record does not, however, raise the question, we do not pass upon it.

In this view of the petition, the instructions in chief are erroneous.   They are evidently based upon the doctrines recognized in *Britton* v. *Turner*, 6 N. H. 841, and there, as already shown, the declaration contained the common counts. Here there are no common counts, and there could, therefore, be no recovery, except upon the promise set out in the special counts.   If the jury found that the contract was proved and performed, as set forth in either count, then, of course, these instructions were immaterial, and could not have prejudiced the defendant.   And was it manifest from the proof, that plaintiff did in fact fulfill his contract, and was entitled to recover the full contract price, we should not incline to disturb the verdict.   But so far from this being manifest, it quite clearly appears, that the work was

abandoned by plaintiff. And yet, while the jury may have believed this, under these instructions they were justified in finding whatever the plaintiff's materials and services were worth, over and above the damages which resulted to defendant from the breach of the contract. This, we think, could not be done under the petition. The first count, as already stated, is not upon an entire contract. Neither is it of that class of cases which we sometimes see, where the materials, work, time, and manner of performance, are all contained in a special contract, but the price to be paid is left unsettled or undetermined. In such a case, it would be manifestly proper to set forth the contract, and claim to recover whatever the services and materials were reasonably worth. But, in this case, while, by the first count, plaintiff does not declare upon an entire contract, yet he does allege and claim, that the prices to be paid, as well as the materials and work, were fixed and determined by his agreement or contract with the defendant; and, having so · declared, we think, he cannot abandon the same, without other averments, and recover upon an implied obligation. And this view applies, with much more force, to the second count, for there there is an express averment, that plaintiff was to, and did, fulfill a contract entire in its character.

The plaintiff, however, insists that certain averments made in the concluding part of the second count, entitled him to recover as in general assumpsit. Without referring to these averments in detail, we conclude that we should permit too loose a system of pleading, to so treat them. If this part of the count, had the substance, we should not be inclined to hesitate as to the form. It appears to have been thrown in without any very definite object, and as such, may properly be disregarded.

It is further claimed by plaintiff, that we cannot, as a court of errors, inquire into the correctness of the instructions, because the exceptions thereto are too general and indiscriminate. The bill of exceptions sets out all the testimony, the entire charge of the court, as well as the instructions asked by plaintiff, and concludes as follows: " To all which in-

structions of the court, as well those given by the court, as those given at the request of the plaintiff, the defendant then and there excepted, and prayed," &c.  The point now made is, that inasmuch as the charge of the court, and the instructions asked by the plaintiff, involve several propositions, if some of them are unobjectionable, then a general exception will present no question which can be reviewed in this court.  The plaintiff relies to sustain this position, principally upon the New York cases, citing *Caldwell* v. *Murphy*, 1 Kernan, 416 ; *Hart* v. *Railroad Co.*, 4 Seld. 43, and others, as also the decisions from some other states.  Without examining in detail these cases, we may say that many of them, are not analogous to the one at bar, while others, were made under a system of practice quite different from ours.  Under our Code, the charge of the court is to be confined strictly to matters of law, and if desired by either party, must be in writing, and placed in the hands of the jury.  So also, the instructions asked by either party, shall be in writing, if required by the court.  To any decision or opinion, either party may except, which is done (if for matters occurring during the trial), by reducing the same to writing, before the verdict is rendered, unless otherwise arranged by consent.  When reduced to writing, and signed by the judge, the bill of exceptions becomes a part of the record.  And thus we see, that under our practice, all the instructions may become part of the record in a case, as fully and entirely as any other portion of it.  To make them so, however, as this court has frequently held, it is necessary that the party objecting, shall have the same incorporated into a bill of exceptions.  When he has done this, we see no warrant under our statute, for saying that the errors will be disregarded by this court, if a portion of the instructions should be unobjectionable.  The hardship and difficulty of which the plaintiff speaks, we think, might be easily obviated by attention on the part of the court and opposite counsel, to the bill of exceptions.  We coincide, most freely, in the position, that this court should only pass upon the very matters which were determined by the court below, and that a party should not be surprised by

Eyser v. Weissgerber.

having to meet a new issue in the appellate tribunal; and with reference to the instructions, this may be easily accomplished. Take this case as an illustration. After the instructions were given, the defendant stated, as we may suppose, that he excepted to the same. Then it was in the power of the court, to require that he should specify to what particular proposition or propositions involved in the charge, he wished to take his exceptions. And if the court did not exercise this power, the opposite party might have required it; and thus, in one way or the other, might have been brought to the attention of the court, the objectionable matter contained in the charge, and an opportunity given to correct the same, if desired. If it appeared that when thus required, the defendant refused to point out the particular parts to which he objected, there would be great force in the position, that this court should not reverse, if any part of the instructions were unobjectionable. This practice strikes us as fair and equitable, and in accordance with the spirit of the Code. In this method, we may, at least, approximate having only those questions revised in this court, which were contested by the parties in the court below. When, however, the exception is general to the whole charge, and not objected to, by the opposite party, or required to be specified by the court, we think the appellant may assign his errors here, so as to obtain a review of any part of such instructions. There is another consideration that has much weight with us, in determining this question. The course pursued in this case, by appellant, in excepting to the charge of the court as a whole, is that uniformly followed, and in the absence of some positive, statutory requirement, we should be unwilling to enunciate a rule that might, and probably would, result in affirming a large proportion of the cases before us, which have been prepared in strict accordance with the uniform practice. By pursuing the course indicated herein, we think all the difficulties suggested by plaintiff, may be prevented, and much injustice to parties, and labor to this court, obviated. We conclude, therefore, that the bill of exceptions does properly present the objec-

tions urged by defendant; that the instructions given by the court were erroneous, as applied to the case made by the plaintiff's petition; and that the judgment must be reversed.