LOUIS NAEVE, APPELLANT, V. THOMAS E. SHEA ET AL.: NATIONAL SECURITY FIRE INSURANCE COMPANY ET AL., APPELLEES.

FILED FEBRUARY 14, 1935. No. 29125.

*Ziegler & Dunn,* for appellant.

*Morsman & Maxwell, Shotwell, Monsky, Grodinsky & Vance* and *Silber, Isaacs, Clausen & Woley, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

ROSE, J.

A dance hall and contents in Naeve's Park, Sarpy county, were destroyed by fire September 7, 1932, and this is an action by the owner of the property, Louis Naeve, plaintiff, to recover the resulting loss of $8,750, from the National Security Fire Insurance Company, the Concordia Fire Insurance Company, and Thomas E. Shea and Henry

C. Dross, partners engaged in soliciting and writing fire insurance as the Shea-Dross Insurance Agency, defendants.

The action is not based on fire insurance policies issued by defendants to plaintiff, but on alleged actionable wrongs making them liable to him for the loss caused by the fire. Each insurance company named as defendant demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action against demurrant. The trial court sustained the demurrers. Plaintiff refused to plead further and appealed from a dismissal of the action as to demurrants.

The question presented by the appeal is the sufficiency of the petition to state a cause of action against the two demurring insurance companies. Their relation to the Shea-Dross Insurance Agency, as shown by the petition, was the subject of elaborate discussion on both sides. Plaintiff took the position that the insurance companies owned, controlled and operated the agency or were engaged with it in a joint enterprise, in either situation being liable in tort for the loss occasioned by fire. This position was assailed by demurrants on the grounds that plaintiff attached to his petition as a part of it a written contract showing the relation of the Shea-Dross Insurance Agency to the insurance companies was that of debtor and creditor; that the purpose of the written instrument was to require application of the net earnings of the agency to preexisting debts owing by it to the insurance companies; that the rights, duties and obligations of the parties were fixed by the writing which did not provide for a partnership or a joint enterprise, but did provide for a legitimate method of collecting debts on terms which could not be varied or contradicted by parol agreements pleaded in the petition, there being no charge of fraud or mistake inhering in the written contract. The document attached to the petition reads thus:

"Memorandum of Agreement by and between Dan F. Brown, Local Manager of the Southern Surety Company

of Des Moines, L. P. Carpenter, State Agent of the Concordia Fire Insurance Company of Milwaukee and P. K. Walsh, Vice President of the National Security Fire Insurance Company of Omaha, and Thos. E. Shea and Henry C. Dross, Partners in the Shea-Dross Agency of Omaha, Nebraska, entered into this 28th day of April, 1928.

"By mutual understanding, it is agreed in meeting held this day as follows:

"1. That from and after this date all premiums on policies or other contracts of insurance or indemnity, issued through the Shea-Dross Agency, shall be paid into the account of Shea-Dross Agency in the Live Stock National Bank of Omaha, without any deductions whatsoever, and shall remain in said account subject only to check drawn by Shea-Dross Agency, signed by Thos. E. Shea and Henry C. Dross, and countersigned either by Dan F. Brown or P. K. Walsh or L. P. Carpenter. It is further understood that in the case of the Southern Surety Company there are certain accounts which are by previous custom paid direct to the branch office in Omaha, which shall be excepted from the foregoing agreement, with the exceptions of the net commissions thereon, which are to be accounted for in accordance with the terms of this agreement.

"2. That on the 15th day of each month, beginning May 15th, 1928, unless that be a holiday or Sunday, when the 16th day will be appointed, in the presence of either Dan F. Brown or P. K. Walsh, the Shea-Dross Agency will issue checks against the above mentioned bank account, payable to the insurance companies for balances due said companies and other brokerage accounts as may be due and payable at that time under the intent of this agreement and office expenses necessary to the conduct of the business. The payments to each company shall be carried forward on the basis of their status on the books of the Shea-Dross Agency and the companies at this date; and if the amount on hand in said bank account is not sufficient to pay the whole amount, then due for any

month to the companies under this agreement, the amount on hand shall then be prorated equitably among the companies whose accounts would then have been payable under this contract. Any balance remaining due the companies shall be carried forward until the 15th day of the succeeding month when such remainders of balances shall be first paid before prorating on the balances up for consideration and payment on that date, and should there be a bank balance it is to be prorated and applied on the next monthly balance in order to the companies.

"It is the intent of the foregoing paragraph that each month's balances due companies, beginning with October balances, shall be paid in succession as rapidly as funds will permit.

"It is further mutually agreed that the office expense shall be limited to salaries of $175 each month to Thos. E. Shea and Henry C. Dross and to $65 per month to L. Doneghan, being one-half of this amount on the first and 15th of the month, plus office rent of $45 per month and the incidental essentials to the maintenance of the office.

"Shea-Dross agree to instruct the Live Stock National Bank, in writing, and to secure new signature card for Shea-Dross account, in accordance with the above immediately.

"It is further agreed that on the 15th day of each month or as near that date as practical, either Dan F. Brown, P. K. Walsh or L. P. Carpenter will in company with Henry C. Dross and Thos. E. Shea make a verification of agency accounts due to the agency and due to the companies and brokers, including collections and cancelations, as well as business written.

"In witness whereof, each and all of us have this day subscribed our names as individuals representing the above named firms, subject to home-office approval.

"Thos. E. Shea
"Henry C. Dross
"Dan F. Brown
"L. P. Carpenter
"P. K. Walsh."

A mere summary of some of the facts pleaded in detail by plaintiff will be sufficient for the purpose of reviewing the ruling on the demurrers when the petition is tested by the following standard:

"A petition challenged by demurrer charges what by reasonable and fair intendment may be implied from the facts stated." *Meeske v. Baumann*, 122 Neb. 786. See *Roberts v. Samson*, 50 Neb. 745.

By direct charge or by reasonable and fair intendment from facts stated, the petition contains pleas that the Shea-Dross Insurance Agency was formed as a partnership in September, 1922, and transacted the business of an insurance agency until April 28, 1928, when indebted to the demurring insurance companies and the Southern Surety Company of Des Moines in approximately $15,000; that those insurance companies were authorized to transact business in Nebraska, but that the latter is not now in existence; that upon demand for payment of the agency's debt, at a meeting of the parties April 28, 1928, Shea and Dross said they were unable to discharge the obligation; that the agents and the three insurance companies named entered into an oral agreement by which the companies took over, owned, controlled and operated the Shea-Dross Insurance Agency; impounded its gross earnings; provided for the payment of its expenses out of its income; fixed salaries of Shea and Dross for future services in soliciting new business for the new owners; controlled the gross and net proceeds of the agency; required the agents to go out on the streets and procure risks for the demurrants; assumed and afterward, through the agency, canceled fire risks on plaintiff's property; took premiums for and procured on plaintiff's dance hall five worthless fire insurance policies in spurious companies which were insolvent or nonexistent or without authority to transact business in Nebraska and retained the commissions of the agency for procuring the risks; supervised and controlled the bookkeeping of the agency and required records disclosing its accounts, the amounts due insurance companies and brok-

ers, collections, cancelations, new business and the names of the insurers in which the new business was written; that the written instrument was a sham; that by means of the fraudulent and wrongful acts committed by defendants pursuant to the oral and written agreements the demurrants wrongfully and fraudulently caused the loss of insurance to which plaintiff was entitled; that the written agreement did not contain the entire contract of the parties to it; that after the writing was executed the contracting parties by mutual consent carried out oral terms not contained in the written instrument and issued the worthless policies by which plaintiff was defrauded, he not knowing until after the fire that they were written in the names of unlicensed or insolvent or nonexistent insurance companies; that plaintiff gave due notice of his loss and demanded payment, which was refused.

The facts outlined are shown in detail by direct charges or are by reasonable and fair intendment implied from facts stated in the petition. The demurring insurance companies are charged as tort-feasors, operating through an agency owned, controlled and operated by them. If they defrauded plaintiff by primary, affirmative acts of their own through their own agency, the right of plaintiff to recover does not depend on allegations showing that all defendants were engaged in a partnership or in a joint enterprise. Demurrants were engaged in procuring and insuring fire hazards. That was their business. Insurance companies and their agents are forbidden by law to procure or effect fire insurance on property in Nebraska in companies not licensed to write it. Comp. St. 1929, sec. 44-218. The action is not based on the parol agreement or on the written instrument or on both combined. Plaintiff is not seeking to enforce either, but both, according to the petition, are factors in the alleged wrongs by which demurrants procured for plaintiff worthless fire insurance policies in spurious, insolvent companies.

The argument in support of the demurrers and the decision sustaining them seem to disregard a well-established

principle of law applicable to the controversy, as shown by the following statement of a text-writer and by excerpts from opinions of courts generally:

"A contract partly in writing and partly oral is, in legal effect, an oral contract. It occurs where an incomplete writing, or one expressing only a part of what is meant, is by oral words rounded into the full contract; or where there is first a written contract, and afterward it is changed orally." Bishop, Contracts (2d ed.) sec. 164.

"It is a well-established rule of law that, when the whole of a contract has not been reduced to writing, such a contract in its entirety is to be regarded as a parol contract, subject to all the incidents of purely parol contracts, and proper to be proved entirely by parol testimony, notwithstanding that there may be documentary evidence of parts of it, and parts of it even may have been reduced to writing. Greenleaf on Evidence, sec. 284a; *Jervis v. Berridge*, L. R., 8 Chan., 351; *Wright v. Weeks*, 25 N. Y. 153." *Evans v. Schoonmaker*, 2 App. D. C. 62.

"A written contract is one which, in all its terms, is in writing. A contract partly in writing and partly oral is, in legal effect, an oral contract. The contract cannot be said to be in writing unless the parties thereto, as well as the terms and provisions thereof, can be ascertained from the instrument itself." *Railway Conductors Benefit Ass'n v. Loomis*, 142 Ill. 560.

"Where a written memorandum is made of an oral contract for the sale of real property, and the terms of the contract are afterwards changed by oral agreement of the parties, the whole thereupon becomes an oral contract." *Snow v. Nelson*, 113 Fed. 353. See, also, *Murphy v. Cicero Lumber Co.*, 97 Ill. App. 510; *Louisville, N. A. & C. R. Co. v. Reynolds*, 118 Ind. 170; *Tishbein v. Paine*, 52 Ind. App. 441; *Brotherhood of Locomotive Firemen and Enginemen v. Corder*, 52 Ind. App. 214; *Miller v. Sharp*, 52 Ind. App. 11; *Stauffer v. Linenthal*, 29 Ind. App. 305.

Fraud perpetrated by creditors in making collections from debtors, if resulting in pecuniary damage to an inno-

cent third person, may be pleaded and proved by the latter as an actionable wrong.

Since the law treats the partly written and partly oral contract pleaded by plaintiff as being entirely in parol, the petition is not demurrable. The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.