LOUIS NAEVE, APPELLANT, V. THOMAS E. SHEA ET AL., AP-PELLEES.

273 N. W. 265

FILED MAY 14, 1937. NO. 29989.

Ziegler, Dunn & Becker and D. L. Manoli, for appellant.

Morsman & Maxwell, Shotwell & Vance, Clausen, Hirsh

*& Miller, T. A. Hollister* and *Crofoot, Fraser, Connolly & Stryker, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and LIGHTNER, District Judge.

CARTER, J.

Plaintiff brought this action against the defendants to recover for loss sustained by reason of a fire that occurred on September 7, 1932, destroying property belonging to him. At the close of all the evidence each defendant moved for a directed verdict. The trial court sustained the motion as to the defendants National Security Fire Insurance Company and Concordia Fire Insurance Company, and dismissed the action as to them. Plaintiff thereupon moved for a directed verdict against the defendants Thomas E. Shea and Henry C. Dross, which was sustained and judgment entered against them for $10,697.60. From the order overruling his motion for a new trial against the two defendant insurance companies, plaintiff appeals.

The record discloses that the Shea-Dross Agency was a partnership composed of Thomas E. Shea and Henry C. Dross and engaged in the business of writing insurance of various kinds. It further appears that in 1930 the plaintiff applied to the Shea-Dross Agency for fire insurance on a building used as a dance hall located in Naeve's Park in Sarpy county. Due to the nature of the risk, the Shea-Dross Agency was unable to obtain the insurance from any of the companies it represented. It did, however, secure the issuance of policies of fire insurance in the amount of $8,750 through an insurance broker in New York City. The dance hall was destroyed by fire on September 7, 1932, and it was then discovered that the companies issuing the insurance on the property were nonexistent and spurious fire insurance companies.

It appears from the record that, prior to 1928, the Shea-Dross Agency had become financially involved to the extent that it owed the National Security Fire Insurance Company, Concordia Fire Insurance Company and South-

ern Surety Company approximately $15,000. It was indebted to other companies to the extent of $2,000. On April 28, 1928, representatives of the three companies hereinbefore mentioned entered into an agreement with Shea and Dross which plaintiff now contends made each of the three companies part owners of the Shea-Dross Agency and consequently liable for their wrongful acts in delivering policies of spurious fire insurance companies to him. There is no question that the Shea-Dross Agency procured the insurance for plaintiff contrary to the provisions of sections 44-218 and 44-219, Comp. St. 1929. This court on a former hearing of this case held that the petition stated a cause of action against these defendants. *Naeve v. Shea*, 128 Neb. 374, 258 N. W. 666. The court in the opinion said: "The demurring insurance companies are charged as tort-feasors, operating through an agency, owned, controlled and operated by them. If they defrauded plaintiff by primary, affirmative acts of their own through their own agency, the right of plaintiff to recover does not depend on allegations showing that all defendants were engaged in a partnership or in a joint enterprise. * * * The action is not based on the parol agreement or on the written instrument or on both combined. Plaintiff is not seeking to enforce either, but both, according to the petition, are factors in the alleged wrongs by which demurrants procured for plaintiff worthless fire insurance policies in spurious, insolvent companies."

The liability of the defendants is necessarily based upon the relationship created in the agreement entered into on April 28, 1928. If the agreement made the defendant insurance companies sole owners or partners in the Shea-Dross Agency, they would be liable for the wrongful act of the Shea-Dross Agency in causing the issuance of the spurious insurance. On the other hand, if the agreement did not change the relationship of debtor and creditor previously existing between the parties the insurance companies would not be liable.

The agreement in question was partly in writing and

partly oral, according to the allegations of plaintiff's petition. That part of the agreement that was reduced to writing, and which is fully set out in the former opinion of this court, *Naeve v. Shea, supra,* provides in substance that all earned premiums of the Shea-Dross Agency should be paid into the Live Stock National Bank of Omaha subject only to the check of the Shea-Dross Agency countersigned by a representative of one of the three creditor insurance companies; that on the 15th day of each succeeding month the current accounts, salaries and expenses were to be paid and any balance remaining was to be prorated to the three insurance companies which were parties to the contract; that the office expense was to be limited to salaries of $175 each month for Shea and Dross and $65 each month for the office clerk, plus office rent of $45 a month and incidental essentials to the maintenance of the office; and that on the 15th of each month a representative of one of the companies was to verify all accounts due the agency and due to companies and brokers, including collections and cancelations as well as business written.

The written portion of the contract does not purport to convey any interest in the Shea-Dross Agency to any of the three insurance companies that were parties to it. Plaintiff contends, however, that the oral part of the agreement made the defendant insurance companies owners or partners in the Shea-Dross Agency. This contention is based upon the evidence of Thomas E. Shea who testifies to an alleged conversation between himself and L. P. Carpenter, the representative of the Concordia Fire Insurance Company, which took place immediately before the signing of the written portion of the contract hereinbefore referred to and in the presence of Henry C. Dross, Dan F. Brown and P. K. Walsh. The evidence is as follows: "Q. What did you say? A. I said, 'If Dross and I sign this agreement, it simply means we are turning the agency over to you fellows.' Q. Anybody reply to that? A. Carpenter said, 'That is exactly what it means, but we are giving you an opportunity to stay in the business and buy the agency

back.'" This evidence was denied by all the parties present at the time except Brown, who was not called as a witness. Is this evidence sufficient to sustain a finding that the defendant insurance companies were owners or partners in the Shea-Dross Agency after the signing of the contract?

It must be borne in mind that plaintiff had no knowledge whatsoever of the relationship existing between the Shea-Dross Agency and the defendant insurance companies at the time of the delivery of the spurious policies or at the time of the fire. Since the plaintiff had no knowledge of any such relation, the question of the apparent authority of the Shea-Dross Agency to bind the defendant insurance companies is not involved in this case. Restatement, Agency, sec. 194, comment a. The status of the defendant insurance companies must therefore be determined by the agreement they made with the Shea-Dross Agency.

After a consideration of that part of the contract that was in writing and the evidence adduced of that part resting in parol, we are of the opinion that it will not sustain a finding that the defendant insurance companies were owners or partners in the Shea-Dross Agency.

In the early case of *Mollwo, March & Co. v. Court of Wards*, 4 Privy Council App. 419, involving a state of facts much more favorable to the plaintiff than in the case at bar, the court said: "The agreement, on the face of it, is an arrangement between the Rajah, as creditor, and the firm consisting of the two Watsons, as debtors, by which the Rajah obtained security for his past advances; and in consideration of forbearance, and as an inducement to him to support the Watsons by future advances, it was agreed that he should receive from them a commission of 20 per cent. on profits, and should be invested with the powers of supervision and control above referred to. The primary object was to give security to the Rajah as a creditor of the firm." See, also, *Cox v. Hickman*, 8 House of Lords Cases, *267.

In a like case the Florida supreme court said: "The provisions in the agreement authorizing Jones & Bowen to

put a person in Hoover's store in charge and control of the business and books, and that no debt should be incurred by Hoover in the business without their consent, and limiting Hoover to an allowance of fifty dollars per month for his own expenses, and that the proceeds of sale of goods should be carefully kept and paid over each week to Jones & Bowen upon the indebtedness due them and to others, are all measures of security, and do not alter the relationship of debtor and creditor existing between the parties. The whole agreement, in all of its provisions, shows clearly that Hoover was already the debtor of Jones & Bowen, and that he was to continue to be such debtor, and in a larger sum; and that the instrument was designed to secure Jones & Bowen in the payment of that indebtedness. The law is now well settled that where a person loans or advances money or goods to another to be invested in some business or enterprise, the lender to share in the profits as or in lieu of interest on, or in repayment of such loan or advance, does not constitute a partnership; neither will it constitute a partnership as to third persons unless the acts of the parties in furtherance of the agreement between themselves amount to such a holding of themselves out as partners as that third persons are misled into a reasonable belief that a partnership exists in fact." *Dubos & Co. v. Jones, Bowen and Hoover,* 34 Fla. 539, 16 So. 392.

In *National Surety Co. v. Winslow,* 143 Minn. 66, 173 N. W. 181, the court said: "We find nothing in the contract taken as a whole to justify the conclusion of the creation of any relation between defendant and interveners, other than that of debtor and creditor, with the privilege on the part of interveners, as creditors, obviously to guard against a diversion or dissipation of the money advanced by them, to supervise and in effect direct the expenditure of the money earned by defendant under the contract, as well as the funds so advanced. And it is clear that a relation of that character, though coupled with the supervisory right mentioned, can vest in interveners no legal or equitable personal claim to the funds arising out of the transaction."

The burden of proof is upon the plaintiff to establish the allegations of his petition that the defendant insurance companies owned, operated and controlled the Shea-Dross Agency. The evidence shows that some control was exercised over the business, but, under the authorities cited, the control exercised was consistent with the relationship of debtor and creditor. It is clear that it was not intended that the defendant insurance companies were to become owners or partners in the Shea-Dross Agency. On the contrary, the evidence clearly shows that the intent was to give security to the defendant companies to induce a forbearance of suit on their claims. The contract established is one of loan and security between a debtor and its creditors. The contention of plaintiff that defendant insurance companies owned, controlled and operated the Shea-Dross Agency is not supported by evidence sufficient to sustain a judgment. The defendant insurance companies as creditors are not liable for the wrongful acts of their debtors in issuing spurious insurance policies in nonexistent and non-licensed insurance companies.

The trial court therefore rightfully directed a verdict for the defendant insurance companies.

AFFIRMED.