628 P.2d 592

**Donald J. KERSTEN and Genevieve W. Kersten, his wife, Plaintiffs-Appellants,**

v.

**CONTINENTAL BANK, an Arizona Corporation, Defendant-Appellee.**

No. 1 CA–CIV 4658.

Court of Appeals of Arizona,
Division 1,
Department B.

April 21, 1981.

Law Offices of Donald D. Meyers by Donald D. Meyers and Roger C. Malm, Phoenix, for plaintiffs-appellants.

Murphy & Posner by John K. Skomp, and K. Bellamy Brown, Phoenix, for defendant-appellee.

## OPINION

HAIRE, Presiding Judge.

This appeal is from a summary judgment granted in favor of defendant, Continental Bank. The plaintiffs' complaint included four counts. Plaintiffs urge that granting the summary judgment was erroneous with respect to the first three counts. We will discuss those facts necessary to the resolution of each count as they become pertinent.

**46**

## COUNT I

The plaintiffs owned Form-A-Top, Inc., an incorporated business. For the benefit of that business, they became involved in financing arrangements with Continental Bank. We will treat the interests of the plaintiffs as being identical to those of Form-A-Top, Inc., as have each of the parties to this litigation.

Count I of the complaint alleged that Continental Bank had breached its agreement to make a $100,000 mortgage loan to Form-A-Top, Inc. The only written evidence of the alleged agreement is a mortgage deed, executed by the plaintiffs on behalf of Form-A-Top, Inc., on September 13, 1973, more than three years before the filing of the complaint. The first issue presented is which of two statutes of limitation apply: the six year statute applicable to actions on indebtedness evidenced by or founded upon a written contract, A.R.S. § 12–548, or the three year statute of limitations applicable to actions on indebtedness not evidenced by a writing, A.R.S. § 12–543. The question is whether Count I is an action based on a written contract or an oral contract.

The mortgage conveyed to Continental Bank a $100,000 mortgage interest in business property. The instrument stated:

"For the purpose of securing:

"First: The performance of the promises and obligations of this mortgage and payment of the just and full sum of ONE HUNDRED THOUSAND and no/100 Dollars ($100,000), with interest thereon according to the terms and conditions of a [sic] certain promissory notes [1] made by ...* payable to the order of the mortgagee at its said principal offices or at such other place or places as the holder of said note [sic] may from time to time designate, which note [sic] is by reference made a part hereof ...

*Form-A-Top Manufacturing, Inc.—Mortgagors represent that they have received consideration for the execution of this mortgage.* (Emphasis added).

[1.] At this point the words "bearing even date herewith" have been interlineated to delete them from the form.

The parties agree that no promissory note was executed at the time of the execution of this mortgage, and that the only notes in existence at the time this mortgage was executed were executed pursuant to an accounts receivable line of credit. The plaintiffs' action, however, is based upon the plaintiffs having allegedly orally agreed to execute another promissory note based upon this mortgage, and the bank's alleged oral agreement to lend Form-A-Top, Inc. an additional $100,000. The bank argues that the mortgage was executed by plaintiffs pursuant to the accounts receivable line of credit. Plaintiffs argue that this conflict creates an issue of fact precluding summary judgment. We disagree. There is no dispute regarding which writing the plaintiffs have founded the action upon. Whether that writing is a sufficient writing for purposes of applying the six year statute of limitations is a question of law.

It is undisputed that the only notes in existence at the time of the execution of the mortgage were those executed pursuant to the line of credit. The mortgage incorporates by reference "certain promissory *notes*" (emphasis added), further stating that the plaintiffs (mortgagors) "represent that they have received consideration for the execution of this writing." The plaintiffs rely upon the mortgage as written evidence of the bank's promise to lend. However, the mortgage does not include any reference to a promise to lend, nor has it been signed by the bank.

The six year statute of limitations requires that the alleged debt, here the obligation to lend $100,000 to plaintiffs, be evidenced by or founded upon a written contract. In *Beane v. Tucson Medical Center*, 13 Ariz.App. 436, 477 P.2d 555 (1970), Division 2 of this court interpreted this requirement as follows:

"In order for a cause of action to be founded upon a contract in writing, the *instrument itself must contain an under-*

taking to do the thing for the non-performance of which the action is brought. *Petty and Riddle, Inc. v. Lunt,* 104 Utah 130, 138 P.2d 648 (1942); *Division of Labor Law Enforcement, Department of Industrial Relations v. Dennis,* 81 Cal. App.2d 306, 183 P.2d 932 (1947); *Tagus Ranch Company v. Hughes,* 64 Cal.App.2d 128, 148 P.2d 79 (1944). A cause of action is not upon a 'contract founded upon an instrument in writing' merely because it is in some way remotely or indirectly connected with the instrument or because the instrument would be a link in the chain of evidence establishing the cause of action. *Petty and Riddle, Inc. v. Lunt,* supra." (Emphasis added). 13 Ariz.App. at 438, 477 P.2d at 557.

*See Long v. Buckley,* 1 CA–CIV 4750 (filed April 2, 1981). In the present action the substance of Count I is that Continental Bank did not perform its alleged promise to loan plaintiff an additional $100,000. The action was not an action by the lender to foreclose the mortgage, as was the case in *Union Water Co. v. Murphey's Plumbing Co.,* 22 Cal. 620 (1863), cited by plaintiffs. Neither the existence nor the terms of that alleged promise are subject to proof by means of the mortgage urged by plaintiffs here as constituting a written contract.

█ The shorter statute for oral contracts recognizes the inherent difficulties of proving an oral contract. The fact that an agreement's existence and terms have been memorialized in a writing eliminates the necessity of relying upon evidence that becomes less reliable through passage of time. Thus, to qualify for the longer statute of limitations the promise upon which the action is based must itself be written. Here, neither the existence nor the terms of the alleged promise by the bank to lend $100,-000 were subject to proof by means of the writing relied upon by plaintiffs. We hold, therefore, that the three year statute of limitations applies and bars the cause of action based upon the alleged promise.

█ In so holding we note that appellants' arguments and citations regarding the application of the parol evidence rule are inapposite. That rule has been developed to determine the circumstances in which evidence extrinsic to a written contract can be admitted to modify, supplement or contradict the terms of a written contract. How the parol evidence rule would apply to evidence submitted at trial in contract litigation is not dispositive of the statute of limitations problem here considered.

█ Plaintiffs next argue that Count I contains sufficient facts to support a cause of action based on promissory estoppel. From this, they argue that A.R.S. § 12–550, the four year general statute of limitations, applies to a cause of action based on promissory estoppel, rather than the three year statute applicable to debts evidenced by oral contracts. Both the doctrine of promissory estoppel and traditional contract doctrines are based upon the enforcement of a promise. The doctrine of promissory estoppel affords relief to parties if justice requires it and the requirements for promissory estoppel are met, but some element necessary to the creation of an enforceable contract, such as consideration, is not present. See *Tiffany Incorporated v. W.M.K. Transit Mix, Inc.,* 16 Ariz.App. 415, 493 P.2d 1220 (1972); *Weiner v. Romley,* 94 Ariz. 40, 381 P.2d 581 (1963); and Restatement of the Law of Contracts § 90 for discussions of this doctrine. In this sense promissory estoppel is quasi-contractual.

█ In *Constanzo v. Stewart,* 9 Ariz.App. 430, 453 P.2d 526 (1969), this court held that the statute of limitations for oral contracts should apply to an action for restitution. It stated:

"[W]e follow the general rule:

'Ordinarily, the statutory period for a quasi-contractual cause of action is the same as for a cause of action based upon an oral contract.' Restatement of Restitution § 148, at 593." 9 Ariz.App. at 433, 453 P.2d at 529.

We find the present situation involving the statute of limitations on promissory estoppel to be analogous. We hold that an action seeking enforcement of an oral prom-

ise, based on the doctrine of promissory estoppel, is subject to the three year statute of limitations. *See Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wash.2d 126, 443 P.2d 544 (1968).

### COUNT II

In 1972, in conjunction with establishing a line of credit, plaintiffs signed a loan and security agreement with Continental Bank on behalf of Form-A-Top, Inc. This agreement established the terms upon which subsequent loans would, from time to time, be made. Each loan was to be evidenced by a promissory note, with the interest rate and maturity terms to be agreed upon when the note was issued. Several loans were made and notes issued pursuant to this agreement. In September 1973, an agent of the Internal Revenue Service informed the bank that Form-A-Top, Inc., owed $30,000 in delinquent payroll taxes and that if that debt was still unsatisfied in early October, the government would put liens on Form-A-Top, Inc.'s bank accounts.

In the months immediately preceding this notification, the bank had been furnished with financial statements of Form-A-Top, Inc. The most current income statement indicated a considerable loss. Additionally, the accompanying balance sheet showed a negative net worth. Confronted with the possibility of an IRS lien, Continental Bank, without first notifying Form-A-Top, Inc., offset the Form-A-Top, Inc. account balances against the outstanding promissory notes. Additionally, Continental Bank sent notices to Form-A-Top, Inc.'s account debtors, requesting that payment be made directly to the bank. Plaintiffs were notified of Continental Bank's actions immediately after they were taken.

Plaintiffs founded Count II upon breach of the loan and security agreement. The factual predicates for the alleged breach are two:

1) That Continental Bank requested the account debtors to pay Continental Bank directly, and

2) That Continental Bank offset Form-A-Top, Inc.'s bank accounts.

Plaintiffs argue at length that summary judgment was precluded asserting that the bank's actions could only be taken in good faith. The burden was on plaintiffs to establish lack of good faith. *Anderson v. Mobile Discount Corp.*, 122 Ariz. 411, 595 P.2d 203 (1979); A.R.S. § 44–2215. Plaintiffs cannot preclude summary judgment by merely raising good faith as an issue. They must present evidence which would entitle a finder of fact to find lack of good faith. No such evidence was presented.

At oral argument and in their briefs, plaintiffs attempt to raise an issue of fact as to whether the IRS agent actually advised the bank that Form-A-Top, Inc. owed $30,000 in payroll taxes and that the Service would be taking immediate collection actions. Continental Bank presented the affidavit of its employee who stated that he received this call. Plaintiffs contend that if this call did not actually occur, the bank was acting in bad faith. However, plaintiffs presented no evidence that the call did not occur. Plaintiffs did not depose the IRS agent or present the agent's affidavit to impeach the credibility of the employee, nor did he depose the employee to expose inconsistencies. Had the employee testified at trial as he did in his sworn affidavit, there would have been nothing intrinsic in the testimony which would have entitled the finder of fact to disregard it. Moreover, plaintiffs have not contributed any extrinsic evidence which would entitle a finder to disregard the testimony. Without some evidentiary basis we cannot assume that the deponent was not telling the truth. Although we do not fully understand why an IRS agent would have made such a phone call, plaintiffs did nothing to develop or contradict the facts sworn to by the employee.

Plaintiffs further contend that to act in good faith the bank must act in a commercially reasonable manner. We find nothing commercially unreasonable about the actions taken by the bank to protect its position. There is no evidence that other banks would have reacted differently under these circumstances.

The question becomes whether the bank had the legal right to act as it did, given that it acted in good faith, without first notifying Form-A-Top, Inc. With respect to requesting direct payment from Form-A-Top, Inc.'s account debtors, Continental Bank clearly had a contractual right to do so. The loan and security agreement established that the accounts receivable were collateral for the loans. Paragraph 4 establishes that the bank is entitled to receive all proceeds from the accounts receivable of Form-A-Top, Inc. These proceeds are to be deposited to a "remittance account" upon which the bank has the sole power of withdrawal. Most significantly, the bank has the contractual right *"at any time* ... [to] notify any or all of the account debtors to make payments directly to the bank and the bank may enforce collection of, settle, compromise, extend or renew the indebtedness of such account debtors." (Emphasis added). The same paragraph further states:

> "Until account debtors are otherwise notified, Debtor, *as agent of Bank,* shall make collections on the Collateral." (Emphasis added).

These provisions do not require that the bank notify Form-A-Top, Inc. before notifying the account debtors. Neither is notice required when this paragraph is read in the context of the agreement as a whole. The right to request account debtors to pay the bank directly can be exercised "at any time", and does not require notice or default on the notes.

Plaintiffs argue that for the contract to permit such action by the bank is unconscionable. However, the statute affording an opportunity to present evidence on unconscionability, A.R.S. § 44–2319 B, has no application to secured transactions. *Anderson v. Mobile Discount Corp., supra.* Furthermore, A.R.S. § 44–3148 (UCC 9–502) specifically approves of such an agreement:

> "Collection rights of secured party
>
> "A. *When so agreed* and in any event on default *the secured party* is entitled to notify *an account debtor* or the obligor on an instrument to make payment to him

whether or not the assignor was theretofore making collections on the collateral...." (Emphasis added).

We next address the plaintiffs' contention that Continental wrongfully offset its checking accounts by not notifying Form-A-Top, Inc. before the action was taken.

The plaintiffs assert that Continental Bank had no right to apply the deposits of Form-A-Top, Inc. to the promissory note indebtedness because the notes had not matured and Form-A-Top, Inc. was not in default. Continental Bank contends: 1) that the notes were demand notes, and therefore were matured and proper for set-off from date of issue, 2) that the contract provides for set-off whether the debt was matured or not, and 3) that, in fact, the notes were in default under the contract because the bank was in good faith insecure. The facts necessary to resolve any of these issues were stated previously and are uncontroverted.

Absent an agreement to the contrary, a bank cannot apply the deposits of its customer to satisfy an unmatured indebtedness. 10 Am.Jur.2d *Banks* § 669 at 640–641 (1963). However, a demand note is not an unmatured obligation and is properly subject to set-off at any time. *Allied Sheet Metal Fabricators, Inc. v. Peoples National Bank of Washington,* 10 Wash.App. 530, 518 P.2d 734 (1974), *cert. denied* 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974). Plaintiffs contend, however, that the promissory notes were not demand instruments and therefore demand for payment was necessary. The notes provided for payment "on demand, if no demand in 90 days." In *Peterson v. Valley National Bank of Phoenix,* 102 Ariz. 434, 439, 432 P.2d 446, 451 (1967), the Arizona Supreme Court discussed demand notes:

> "As a general rule, notes payable on demand are due and payable immediately after execution, and no further demand is necessary to mature them. But an exception to this rule applies when the terms of the instrument disclose an intention by the parties that the notes would not become due and payable immediately after the time of delivery. *Bank of Ne-*

**50**

*vada v. United States*, 251 F.2d 830 (9th Cir. 1957), cert. den. 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813; *Blick v. Cockins*, 131 Md. 625, 102 A. 1022 (1917). *In such circumstances, an actual demand is necessary to mature the promissory notes.* The terms of the notes in the present case provided one interest rate from the date of execution until maturity, and a higher rate of interest after maturity. This discloses a clear intention by the parties that the notes not be due and payable immediately. To hold otherwise would be inconsistent with the express terms of the note, and render these provisions meaningless." (Emphasis added).

Plaintiffs cite *Bank of Nevada v. United States*, 251 F.2d 820 (1958), wherein the court determined that a demand was necessary to mature a promissory note which read:

"On demand; if no demand is made, then on August 14th, 1955."

This language is almost identical to that employed in the present case. We agree with plaintiffs that the notes issued to Form-A-Top, Inc. are not demand notes; rather, they require a demand to become matured debts. Thus, the bank had no common law right to offset Form-A-Top, Inc.'s accounts.

■ However, in paragraph 6(b), the contract specifically provides for the setoff of unmatured debts as follows:

"Debtor grants bank, as further security for the Obligations, a security interest and lien in any credit balance and other money now or hereafter owed Debtor by Bank and in addition, agrees that Bank may, *without prior notice or demand,* charge against any such credit balance or other money any amount owing upon the obligations, *whether due or not.*" (Emphasis added)

The parties have expressly agreed that the deposits of Form-A-Top, Inc. may be offset regardless of whether the debts are due and without notice or demand. No default is necessary for this option to be available to the bank. The parties have contracted for the same rights that the bank would have

had if the notes actually had been demand notes.

This interpretation is consistent with other provisions of the contract. Paragraph 8 defines default. It provides procedures for assembly and disposition of collateral in the event of default. Collateral, under the agreement, includes inventory, and chattel paper. Paragraph 8 is directed toward the bank's rights with respect to them, not its rights with respect to funds on deposit with the bank. The bank's rights as against deposits are more specifically provided for in paragraph 6(b). We hold that Continental Bank was entitled to judgment as a matter of law as to Count II of its complaint.

COUNT III

■ Plaintiffs finally contend that summary judgment should not have been granted with respect to Count III which charged Continental Bank with intentional interference with Form-A-Top, Inc.'s business relations. The entire argument is premised upon the assumption that Continental Bank's actions, discussed above, were not a valid exercise of its contractual rights under the loan and security agreement. Having resolved Count II in favor of Continental Bank, we hold that the trial court did not err with respect to Count III. No lack of good faith was shown by plaintiffs and Continental Bank's actions were taken in the legitimate exercise of its contractual rights. Any interference was neither unjustified nor tortious.

The judgment of the trial court is affirmed.

JACOBSON and EUBANK, JJ., concur.