**Carl W. MATHERLY, Appellant,**

v.

**John K. HANSON, Appellee.**

**No. 83–1562.**

Supreme Court of Iowa.

Dec. 19, 1984.

Rehearing Denied Jan. 10, 1985.

Robert E. Mannheimer, Ronald L. Anderson, and Barbara G. Barrett of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

John A. Templer, Jr., and David J. Darrell of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellee.

McGIVERIN, Justice.

This appeal requires us to determine whether a certain set of writings constitutes a written contract within the meaning of Iowa Code section 614.1(5) (1983). That section provides that an action founded on a written contract must be brought within ten years of the accrual of the cause of action. Section 614.1(4) establishes that an action founded on an unwritten contract must be brought within five years after the cause of action accrues. Plaintiff's action alleged breach of a contract between himself and defendant, and was brought approximately nine years after the cause of action was alleged to have accrued. The trial court ruled that the action was founded on an unwritten, rather than a written, contract for statute of limitations purposes and was therefore barred by section 614.1(4). We agree and affirm the trial court's entry of summary judgment for defendant based on that reasoning.

Plaintiff Carl W. Matherly filed suit against defendant John K. Hanson on April 26, 1982. In his petition he alleged that defendant owed him $78,000 for unspecified personal services rendered from 1969 to 1971. He further alleged that he and defendant agreed on a somewhat novel method of paying him. According to plaintiff, defendant loaned him money with which to invest in securities. Any gains on the investments up to $78,000 would belong to plaintiff. Any gains beyond $78,000 would belong to defendant. In the event of losses, defendant would be responsible not only for the losses but also for the $78,000 he owed plaintiff. This arrangement, plaintiff alleged, was called the "ups and downs game."

Plaintiff further alleged that during 1972 defendant loaned him a total of $506,000 with which to play the ups and downs game. Plaintiff repaid the loans at defendant's request in December 1972 and thereafter financed the game on his own until early 1973, when defendant requested him to sell all the investments and end the game.

The game resulted in a net loss of approximately $114,000 on the investments. Plaintiff paid approximately $11,000 interest on loans he took out in 1973 to finance the game. Adding those two amounts to the $78,000 he had originally claimed as compensation, plaintiff arrived at a total of approximately $203,000 allegedly owed him by defendant.

Plaintiff's suit for this amount was filed in April 1982, about nine years after his cause of action allegedly accrued in early 1973. Defendant's answer generally denied the allegations of plaintiff's petition.

Defendant then moved under Iowa R.Civ.P. 237 for summary judgment, contending that the five-year limitation period for actions founded on unwritten contracts had expired, and that the writings adduced by plaintiff as evidence of the agreement between him and defendant were insufficient as a matter of law to constitute a written contract and thus entitle plaintiff to the benefit of the ten-year limitation period for actions founded on written contracts. *See* Iowa Code §§ 614.1(4), (5).

Plaintiff maintained that a written contract did exist, and that, therefore, his suit was properly brought within the longer limitation period. The trial court disagreed and granted defendant's motion for summary judgment, holding that as a matter of law the writings adduced by plaintiff were not a written contract within the meaning of section 614.1(5).

 Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The burden of showing that there is no genuine issue of material fact is upon the party moving for summary judgment. *Sandbulte v. Farm Bureau Mutual Insurance Co.*, 343 N.W.2d 457, 464 (Iowa 1984). On appeal, we examine the record in the light most favorable to the party opposing the motion to determine if the movant has met his or her burden. *Id.*

There is no dispute as to the content of the writings relied upon by plaintiff as constituting a written contract between him and defendant. The first writing consists of the following lines handwritten on a piece of defendant's letterhead stationery:

Carl paid to
settlement date
Oct. 7, 1971
in full
JKH

Carl stock deal
difference $78,000
game to be played
on opportunities for ups
or downs

The writing is initialed at the bottom by defendant, signed by plaintiff, and dated "10–14–71."

The other writings relied on by plaintiff are a series of standard form promissory notes which plaintiff alleges represent the money loaned to him by defendant to play the ups and downs game. On the first note these handwritten words appear. "Subject to Ups and Downs Game. Ups to Carl W. Matherly. $78M goal. Downs to John K. Hanson." The other notes contain no handwriting except that which appears in the blanks to indicate dates, amounts loaned, and other standard note terms.

I. *Whether the documents constitute a written contract.* The question presented is whether the writings relied on by plaintiff constitute a written contract for the purposes of application of the ten year limitations of actions period. Iowa Code § 614.1(5).

 A. This court resolved an issue similar to that presented here in *Lamb v. Withrow*, 31 Iowa 164 (1871). *Lamb* also involved a suit on an alleged contract, brought before the limitation period for written contract suits but after the limitation period for suits on unwritten contracts. The plaintiffs had paid off certain notes of the defendant and then sought indemnification, contending that they were defendant's

sureties on the notes. However, neither the notes nor any other writing chargeable to the defendant showed the surety relationship. The plaintiffs relied on parol evidence to establish that fact. In holding that the limitation period for suits founded on unwritten contracts applied, the court said:

> The spirit as well as the letter of the statute of limitations requires, that, in order to prevent the [limitation period for actions founded on unwritten contracts] from applying to this action, the *essential facts* establishing the liability of the defendant shall be shown by his *written contract.*

*Lamb v. Withrow,* 31 Iowa at 168. (Emphasis in original.)

 We believe these words are logically well founded. Certainly one of the essential features of a contract is an obligation or liability to do or not do something. *See Mullenger v. Clause,* 178 N.W.2d 420, 428 (Iowa 1970). Where the liability cannot be shown by a writing, it is reasonable to say as a matter of law that an action on such liability is founded on an unwritten rather than a written contract.

This approach is consistent with that taken in other jurisdictions. In *Regina Apartments, Inc. v. Village Green, Inc.,* 60 Ohio App.2d 345, 397 N.E.2d 420 (1978), plaintiff sued defendant for allegedly failing to repay loans made to him and offered as evidence a series of cancelled checks from plaintiff to defendant with the word "loan" written in the upper left-hand corner of each check. The trial court held that the checks did not constitute agreements in writing for the purpose of the statute of limitations, and granted defendant's motion for summary judgment on the ground that the limitation period for actions founded on unwritten agreements had expired. In affirming the trial court, the Ohio Court of Appeals noted:

> [T]he single word "loan" written on the instrument gives no indication as to who owes whom or whether the check is a loan or the repayment of a loan.

In order for an action to come within the statute of limitations governing actions upon . . . an agreement, contract, or promise in writing . . . the action must grow out of a written instrument which first acknowledges indebtedness or second promises to pay in such terms as to make supplemental evidence unnecessary. [Citations.] In this case it is clear that supplemental evidence would be required to complete the terms of whatever understanding the parties may have had.

60 Ohio App.2d at 347, 397 N.E.2d at 422.

*National Bank of Commerce of Seattle v. Preston,* 16 Wash.App. 678, 558 P.2d 1372 (1977), presented a similar question. Plaintiff maintained that check stubs containing the notation "loan" and the corresponding checks to defendant constituted written loan agreements within the statute of limitations for actions on written contracts. The trial court disagreed and granted summary judgment to defendant. The Court of Appeals of Washington affirmed, saying:

> Parol evidence is necessary to indicate whether the check is for a loan from the drawer . . . to the payee . . ., for the repayment of a loan from [payee] to [drawer], or for a transaction relating to a loan involving a third party.
>
> Admission of parol evidence is necessary to make the inert word "loan" functional. This would be more than clearing up ambiguity in a term of a contract. It would be adding a material term to the contents of the writing and this is impermissible. [Citation.]
>
> . . . Since parol evidence is necessary to establish an essential term of the . . . agreement, . . . the [statute of limitations for oral contracts] applies.

16 Wash.App. at 680–81, 558 P.2d at 1374.

In *Klein v. Frank,* 534 F.2d 1104 (5th Cir.1976), plaintiff sued defendant on an alleged agreement under which defendant was to sell for plaintiff 65,000 shares of a Colorado corporation's stock and remit the proceeds to him. To avail himself of the limitation period for actions founded on written contracts, plaintiff produced a let-

ter from defendant to a person in New York directing the sale of enclosed shares of the corporation's stock and retention of the proceeds for the benefit of plaintiff and another person. At the conclusion of plaintiff's case, defendant's motion for involuntary dismissal was granted on the grounds that the applicable Florida statute of limitations for actions on unwritten contracts barred the suit. On appeal, plaintiff contended that the letter he produced was a written contract of which he was a third-party beneficiary. The Court of Appeals for the Fifth Circuit disagreed:

> The short answer to this contention is that such letter obviously does not contain a contract to do anything for the nonperformance of which the action was brought. The court below was eminently right in concluding that since resort to oral testimony was compelled to make complete the showing of any legal liability incurred by the defendant arising out of such letter, the [limitation period for actions founded on unwritten contracts] was applicable.

534 F.2d at 1107.

In *Kersten v. Continental Bank,* 129 Ariz. 44, 628 P.2d 592 (Ariz.Ct.App.1981), the plaintiff sued the defendant on an alleged agreement to make a $100,000 mortgage loan. To attempt to come within the limitation period for actions founded on written contracts, plaintiff offered in evidence a mortgage conveying to defendant a $100,000 mortgage interest in plaintiff's business property and maintained that the mortgage was indicative of a promise by defendant to loan plaintiff $100,000. Defendant was granted summary judgment on the grounds that the action was founded on an unwritten contract, for which the limitation period had run. In affirming the summary judgment, the court said:

> In order for a cause of action to be founded upon a contract in writing, the *instrument itself must contain an undertaking to do the thing for the nonperformance of which the action is brought.* [Citations.] A cause of action is not upon a "contract founded upon an instrument in writing" merely because it

is in some way remotely or indirectly connected with the instrument or because the instrument would be a link in the chain of evidence establishing the cause of action. [Citation.]

129 Ariz. at 46–47, 628 P.2d at 594–95 (emphasis in original) (quoting *Beane v. Tucson Medical Center,* 13 Ariz.App. 436, 477 P.2d 555 (1970)).

In *Miller v. William A. Smith Constructing Co.,* 226 Kan. 172, 603 P.2d 602 (1979), the court, in finding that a signed purchase order was sufficiently complete to be a written contract within the applicable statute of limitations, said:

> The general rule is that a written agreement, contract, or promise in writing which falls within the [statute of limitations for actions on written contracts] must contain all its material terms in writing. A contract which is partly in writing and partly oral is in legal effect an oral contract so far as the statute of limitations may be concerned. The writing necessary to have the additional protection of the five-year statute must be full and complete in itself so as not to require proof of extrinsic facts to establish all essential contractual terms. [Citations.]

226 Kan. at 174, 603 P.2d at 604.

The Supreme Court of Nebraska has recently said:

> A contract partly in writing and partly oral is, in legal effect, an oral contract. It occurs where an incomplete writing, or one expressing only part of what is meant, is by oral words rounded into the full contract ... [I]f a written agreement is so indefinite as to necessitate a resort to parol testimony to make it complete, the ... statute of limitations concerning "contracts not in writing" would be applicable, just as though the contract had rested entirely in parol.

*Beekman v. Cornhusker Farms,* 214 Neb. 418, 421, 333 N.W.2d 918, 920 (1983) (quoting *Naeve v. Shea,* 128 Neb. 374, 380, 258 N.W. 666, 668 (1935), and *Grant v. Wil-*

*liams,* 158 Neb. 107, 114, 62 N.W.2d 532, 536 (1954)).

■ We note that some of the above cases require that a writing, to qualify as a written contract for the purposes of the statute of limitations, must show all the material terms of the agreement, not merely obligation of the party against whom enforcement is sought. We have no reason to adopt or reject such a broad holding, for we believe the narrower rule of *Lamb,* relating only to such obligation, is sufficient to decide this case. Application of the *Lamb* rule to the present case leads us to conclude as a matter of law that plaintiff's action is founded on an unwritten contract.

There is nothing in the writings offered by plaintiff that shows any obligation or liability of defendant to him. The figure of $78,000 appears twice, but there is no indication whether this represents the amount of an outstanding debt, the amount of a loan, the dollar limit of the ups and downs game, or something else entirely. There is no indication that this sum is owed by anyone to anybody, or, if it is owed, when it is to be paid.

It may be true, as plaintiff maintains, that the writings represent an obligation of defendant to pay him for services rendered, but it is obvious that this state of facts neither appears on the writings nor is inferrable from them. Resort must be had to parol evidence if any obligation of defendant is to be established, and we believe that this precludes plaintiff's reliance on the ten-year statute of limitations.

B. To bolster his contention that his reliance on parol evidence need not preclude his eligibility for the ten-year limitation period, plaintiff relies on a sentence in 51 Am.Jur.2d *Limitation of Actions* § 94 at 668–69:

> If, however, a written agreement, although indefinite or incomplete in some respects, furnishes some objective standard by which its terms may be made definite and the contract made complete, then the written instrument may be considered a contract in writing within the meaning of the statute of limitations,

notwithstanding the fact that resort must be had to parol evidence.

■ Plaintiff maintains that the phrase "ups and downs game" supplies an objective standard by which his writings can be made complete and considered contracts according to the above sentence. Even if the phrase in question does provide an objective standard for interpretation of the writings, we conclude plaintiff's reliance on the above language is misplaced. The case cited in the treatise to support that sentence involved a written instrument which of itself, without amplification by parol evidence, clearly established a duty or obligation by one party to another. *See W.T. Rawleigh Co. v. Graham,* 4 Wash.2d 407, 103 P.2d 1076 (1940). The treatise also cites the annotations at 3 A.L.R.2d 809, 816, § 5 (1949), and 129 A.L.R. 603, 611 (1940), but the cases found therein are similarly distinguishable from the one presented here. The parol evidence in those cases was invariably used to establish such details as the exact amount of money to be paid, or the physical specifications of work to be performed, rather than the basic existence of an obligation to pay or perform by the parties. The treatise that plaintiff quotes recognizes the distinction as an important one. The sentence immediately preceding the one quoted above reads:

> And it is generally held that an action upon a contract is subject to the limitations statute applicable to oral, rather than written, contracts, where evidence extrinsic to a written agreement must be used to show the obligation itself, as distinguished from the details of, the obligation to be enforced.

51 Am.Jur.2d, Limitation of Actions § 94 at 668 (1970). *Cf. Kinney v. Reed,* 164 Iowa 337, 342, 145 N.W. 900, 902 (1914) (use of parol evidence to establish that time was ripe for contract performance did not make statute of limitations for unwritten contracts applicable, because writing relied on by plaintiff was itself a complete contract).

■ C. Plaintiff may be correct in his assertion that he and defendant intended and understood these cryptic and fragmen-

tary writings to express a binding and complete contract. But to show this he must use parol evidence. We believe that this compels the conclusion that the writings themselves are not a contract, but at best are merely links in a chain of evidence indicating a contract. This is insufficient to allow plaintiff to claim the benefit of the ten-year statute of limitations.

We believe that this outcome comports with the policy behind the legislative provision for different statutes of limitation for actions on written and unwritten contracts. The shorter limitation period for the latter class of actions recognizes the undesirability of relying on parol evidence, which frequently tends to become less reliable with the passage of time. *Kersten v. Continental Bank*, 129 Ariz. at 47, 628 P.2d at 595; *El Ranco, Inc. v. New York Meat & Provision Co.*, 88 Nev. 111, 116, 493 P.2d 1318, 1322 (1972). In view of the heavy reliance that plaintiff must place on parol evidence to establish the *very existence* (obligation of whom to whom, for what, and when due) of the contract he urges, we conclude that his action is within that class that the legislature has decided must be brought within five years of the accrual of the cause of action or not at all.

D. We do not reach the issue of what, if anything, else must be contained in a writing in order for it to constitute a written contract within the meaning of Iowa Code section 614.1(5). We hold only that where no writing (or series of writings) chargeable to one party shows the existence of an obligation to another party (or facts from which the law will infer an obligation), any action urging an obligation between the parties is subject to the statute of limitations for actions founded on unwritten contracts. *Lamb v. Withrow*, 31 Iowa 164, 167–68 (1871). *Accord, Klein v. Frank*, 534 F.2d 1104, 1107 (5th Cir.1976) (applying Florida law); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 632–33 (N.D.Cal.1978) (applying California law), *affirmed* 645 F.2d 699 (9th Cir.), *cert. denied*, 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981); *Kersten v. Continental Bank*, 129

Ariz. 44, 46–47, 628 P.2d 592, 594–95 (Ariz. Ct.App.1981); *Estate of Garrett v. Garrett*, 24 Ill.App.3d 895, 898, 322 N.E.2d 213, 216 (1975); *Fairbanks v. Koelling*, 167 Kan. 361, 365–66, 205 P.2d 930, 933–34 (1949); *E.B. Kaiser Co. v. Ludlow*, 243 So.2d 62, 64–65 (Miss.1970); *Martin v. Potashnick*, 358 Mo. 833, 836, 217 S.W.2d 379, 381 (1949); *Beekman v. Cornhusker Farms*, 214 Neb. 418, 421, 333 N.W.2d 918, 920 (1983); *El Ranco, Inc. v. New York Meat & Provision Co.*, 88 Nev. 111, 114–15, 493 P.2d 1318, 1321–22 (1972); *Regina Apartments, Inc. v. Village Green, Inc.*, 60 Ohio App.2d 345, 347, 397 N.E.2d 420, 422 (1978); *Shead v. Grissett*, 566 S.W.2d 318, 320 (Tex.Ct.App.1978); *National Bank of Commerce of Seattle v. Preston*, 16 Wash.App. 678, 681, 558 P.2d 1372, 1374 (1977). *See also Eyser v. Weissgerber*, 2 Iowa 463, 478–79 (1856) (writing, which did not show liability of anyone to do anything, could not be a written contract).

## II. *Estoppel contentions.*

A. Plaintiff contends that under the circumstances in this case defendant should be precluded from maintaining that no written contract exists because defendant wrote the writing dated "10/14/71." Plaintiff relies solely on *Harlow Publishing Co. v. Patrick*, 181 Okla. 83, 72 P.2d 511 (1937), as authority for this contention. We find *Harlow* factually distinguishable as a case in which, although the writings offered by the plaintiff were authored by the defendant, the writings clearly showed the defendant's obligation to perform.

B. Plaintiff also cites *DeWall v. Prentice*, 224 N.W.2d 428 (Iowa 1974), to argue that defendant should be equitably estopped to raise the statute of limitations as a bar to this action. In *DeWall* we considered the factors bearing on the question of when a party is estopped to plead the statute of limitations and said:

> The elements of equitable estoppel are well established. There must be conduct amounting to false representation or concealment, and a party relying thereon must be thereby misled into doing or

failing to do something he would not otherwise have done or omitted.

224 N.W.2d at 430 (quoting *Holden v. Construction Machinery Co.*, 202 N.W.2d 348, 355 (Iowa 1972)).

█ The record shows no allegation or evidence of conduct on defendant's part amounting to false representation or concealment. Even if it is true that the writing dated "10–14–71" was written by defendant at plaintiff's request, it is not argued that defendant made any false representations therein or anywhere else, or concealed any fact from plaintiff at any time. Nor is it alleged that defendant made any representation, false or otherwise, to plaintiff concerning the legal sufficiency or effect of the writing. Plaintiff may have relied on the sufficiency of the writing as a written contract in forgoing suit for nine years after his alleged cause of action accrued, but it does not appear from this record that he did so at the suggestion of defendant. We conclude the record does not show that a genuine issue of fact exists as to whether defendant is equitably estopped to plead the statute of limitations.

█ C. Plaintiff also contends that, because he allegedly performed the contract, he should be allowed to enforce it. However, the issue here *is not* whether there is a contract between the parties, in which case the performance of one of the parties is relevant. The issue *is* whether the writing adduced by plaintiff constitutes a *written contract* for the purposes of applying the correct statute of limitations.

We conclude the trial court was right in determining as a matter of law that the writings here did not constitute a written contract for limitation of actions purposes.

Because this action was subject to Iowa Code section 614.1(4), and because the limitation period prescribed therein had run before the action was filed, the trial court was correct in granting summary judgment for defendant. The case is affirmed.

AFFIRMED.

All Justices concur except CARTER, HARRIS, LARSON and WOLLE, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent.

Ordinarily, the legislature uses words in statutes in the same sense that they have been applied by the courts. *Farmer's Drainage District v. Monona-Harrison Drainage District*, 246 Iowa 285, 289–90, 67 N.W.2d 445, 448 (1954); *Anderson v. Jester*, 206 Iowa 452, 462, 221 N.W. 354, 359 (1928). Particularly, where words and phrases have acquired an established meaning in a particular area of the common law, they are to be accorded that meaning when employed in a statute dealing with the same subject matter. *Farmer's Drainage District*, 246 Iowa at 289–90, 67 N.W.2d at 448. The context within which the terms "unwritten contracts" and "written contracts" are used in Iowa Code section 614.1 relates to the commencement of civil actions founded on contract. Within that context, these words have an established meaning which, if resorted to, would recognize the present action as one founded on a written contract.

Under the standard which the court applies in the present case, the availability of the ten-year statute of limitations, applicable to written contracts, is made to depend not only on whether the parties have adopted a particular writing as the memorial of their agreement, but also upon whether that writing attains a certain artificial level of completeness far beyond that which the law requires for recovery on the instrument. I submit that the degree of completeness and detail which is required of a written contract is best determined in the consideration of the merits of the claim rather than upon a preliminary issue concerning the statute of limitations.

In order for a contract to fall within the ten-year statute of limitations, the court appears to require a degree of completeness sufficient to permit recovery without any resort to parol evidence. This is an unworkable standard which will not

achieve the protections which the court suggests are the basis for its decision. No written agreement, regardless of how descriptive or complete it may be, can be assured of preventing the use of parol evidence with respect to substantial elements of the claim.

Parol evidence to establish the elements of breach and damages will not be affected by the requirements which the majority establishes for proving the obligations imposed on the parties. Moreover, even the most formal, complete, and detailed agreement may be made the subject of parol evidence in order to show what it was intended to mean by the parties who adopted it. In an introductory note to section 209 of the Restatement (Second) of Contracts (1981), the American Law Institute makes the following assessment as to the effect of the adoption of a writing in the formulation of a contract:

> The parties to an agreement often reduce all or part of it to writing. Their purpose in so doing is commonly to provide reliable evidence of its making and its terms and to avoid trusting to uncertain memory. Such a purpose is so common that it is often not discussed; it may not even be conscious. In the interest of certainty and security of transactions, the law gives special effect to a writing adopted as a final expression of an agreement. Such a writing is here referred to as an "integrated agreement."

Whether an agreement is "integrated" is a question of fact. In the present case, there has been presented a genuine issue of fact as to whether the agreement sued on is the completely integrated agreement of the parties.

An "integrated agreement" is the most complete type of agreement recognized by the Restatement with respect to barring parol evidence as to its terms. Yet, even an integrated agreement is subject to having its terms explained by parol evidence. Interpretation of contracts deals with the meaning given to the language by the parties rather than any peculiar meaning established by the law. Both the Restate-

ment (*see* Restatement (Second) of Contracts § 220) and our cases (*see, e.g., Kitchen v. Stockman National Life Insurance Co.,* 192 N.W.2d 796, 801 (Iowa 1971); *Hamilton v. Wosepka,* 261 Iowa 299, 305–14, 154 N.W.2d 164, 167–72 (1967)), permit the use of parol evidence to establish the true meaning of the agreement. Such parol evidence may be the most significant and determinative evidence in the case with respect to establishing what are the obligations of the parties. As provided in section 220 of the Restatement:

> (1) An agreement is interpreted in accordance with a relevant usage if each party knew or had reason to know of the usage and neither party knew or had reason to know that the meaning attached by the other was inconsistent with the usage.
>
> (2) When the meaning attached by one party accorded with a relevant usage and the other knew or had reason to know of the usage, the other is treated as having known or had reason to know the meaning attached by the first party.

The foregoing rule of interpretation is in accord with that which is provided by statute in Iowa Code section 622.22 (1983).

The significance of the foregoing rules of substantive law in determining a proper resolution in the present case is that such rules demonstrate that the use of parol evidence, together with the extent and significance of such evidence, in any individual case cannot be regulated by the precision of the draftsman. The parties are always free to claim the words used have a special meaning and offer parol evidence in support of such claims. These rules of substantive law also indicate that the sufficiency of written contracts is to be determined by resort to the meaning which the words convey to the parties to the agreement rather than their generally accepted meaning.

In the present case, the plaintiff, in resisting the motion for summary judgment, has offered affidavits of several persons, purportedly based on personal knowledge, that the words employed in the written

memorandum signed by plaintiff and initialed by defendant convey a particular meaning which was known to the defendant and which forms the basis for plaintiff's claims in the present action. It is also shown by these affidavits that it was defendant who prepared the memorandum upon which suit is brought as the memorial of the parties' understanding when requested to do so by the plaintiff.

Under the theory upon which plaintiff seeks to recover, he is not seeking to expand upon the terms of the writing but only to explain what those terms meant to the parties. Given this circumstance, the court, in labeling the present action as founded on an unwritten rather than a written contract, completely blurs the distinction between the two.

Corbin, in discussing the meaning of a written memorandum, in an analogous context, states as follows:

> Not much thought has been, or need be, given to the question of what constitutes a "writing." Our education and habits are such that the word "writing" conveys the idea of paper with ink-constructed words thereon.... The words used need not be English words. Indeed, it can not be said that the symbols used must be "words" in any known language. Words are only symbols that are often of very doubtful signification.... A stenographic shorthand symbol is hardly to be regarded as a word; and yet a memorandum written in such symbols, like other short abbreviations, should not be held insufficient for the reason that it is not "written." ... [T]he same is true if the memorandum consists of words in the Russian language or of Chinese ideographs. Hentracks are not "writing" for the reason that they are not symbols of thought in any man's mind. It is quite otherwise with the symbols once used by the Phoenicians (all of whom are dead) or by Samuel Pepys alone (who was dead before anyone "deciphered" his "writing"). If Samuel Pepys had signed a memorandum written by him in his personal hieroglyphic and was the party to be charged thereon, the ... requirements [of a writing] would be satisfied if the other party could obtain in almost any way Pepys' own private key to his private system of symbols.

2 A. Corbin, Contracts § 498 (1950).

The results, as opposed to the language, in most of the cases cited by the court in support of its decision are not inconsistent with recognizing the present action as one founded on a written contract. Most of these cases involve situations where the theory of recovery has not been integrated into the writing upon which the claim is made. In such situations, there is, of course, no limitation on the use of parol evidence to establish the terms and conditions of the unintegrated portion of the contract. These, I submit, are precisely the types of actions which are properly characterized as being founded on unwritten agreements.[1] But, in the present case, plaintiff has grounded his action on a written agreement, a circumstance which subjects him to all of the limitations which the parol evidence rule provides in the proof of written agreements. He properly should be subjected to such limitations, but he should not be subjected to an additional layer of parol evidence restrictions in connection with determining the applicable statute of limitations.

I would reverse the judgment of the district court.

HARRIS, LARSON and WOLLE, JJ., join this dissent.

---

1. *Lamb v. Withrow,* 31 Iowa 164 (1871), relied upon by the majority in support of its decision is such a case. The only writing in that case was a promissory note signed by two persons. One of these persons, after paying off the note, brought an action to have it established that he was only a surety and the other party was the principal obligor. The entire basis for this claim was an oral agreement between the parties. No claim was made that the writing or any of the words used therein, conveyed a meaning from which the principal and surety relationship could be derived.